## MERRIMACK RIVER SAVINGS BANK *vs.* CITY OF LOWELL.

Middlesex.   January 20, 1890. — January 6, 1891.

Present : FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Municipal Corporation — Cutting off Water Supply — Liability to Householder.*

A city, duly undertaking to furnish its inhabitants with water at established rates, which receives from a householder payment in advance for a year's supply, and during the year shuts off the water for the reason that his predecessor in title did not pay the rate for the year next preceding, is liable therefor in damages to such householder.

ACTION, described in the writ as in contract or tort, for shutting off the supply of water from the plaintiff's premises, situated on Mill Street, in Lowell. Trial in the Superior Court, without a jury, before *Mason*, J., who allowed a bill of exceptions, in substance as follows.

The following facts were agreed. The defendant city was empowered by the St. of 1855, c. 435, and by subsequent acts,* to take and hold lands, and to do other requisite acts, and to make rules and regulations for furnishing a supply of water for the use of the city and its inhabitants. By its ordinances the defendant had established a water board and regulations for the management and control of its water supply. Sections 11 and 12 of these ordinances are as follows.

" § 11. The annual rent for the use of the water shall be

---

* Sts. 1866, c. 200; 1869, c. 351; and 1870, c. 321.

made up and assessed to the owners of estates having a service pipe, and not using metered water, on the first day of March in each year for the year commencing the first day of April succeeding said assessment, and the rates so assessed shall be due and payable in advance on the first day of May following. . . . All charges for specific supplies, or for any three hundred and sixty-fifth part of a year, shall be payable in advance, and before the water is let on.

"§ 12. In all cases of the non-payment of the water rates for thirty days after the same are due, the superintendent shall cut off the supply, and the water shall not again be let on, either for the present or any subsequent occupant, except upon the payment of the amount due, together with the sum of two dollars; provided, that in any case where the water may have been let on by mistake or otherwise before payment of the water rate, and contrary to section eleven, it may be cut off without notice. Unless the water board shall otherwise direct, the foregoing provisions shall apply when two or more parties take the water through the same service pipe, although one or more may have paid the proportion due from him or them."

The annual assessments of water rates payable by the users of city water become due on the first day of April, and cover the amount due from such date up to the first day of April of the following year, and are payable in advance, within thirty days. The assessment of water rates on the premises in question for the year commencing April 1, 1886, was not paid. The plaintiff bank took a mortgage upon the premises on April 28, 1885, at which time there were no unpaid water rates thereon, and upon January 13, 1887, duly entered to foreclose for breach of condition, and continued in possession of the same. On or about June 1, 1887, the plaintiff paid the full amount of water rates assessed on the premises for the year commencing April 1, 1887, and on or about August 1, 1887, was notified by the water board that unless the assessments for the year commencing April 1, 1886, were paid, the city water would be shut off from the premises. That assessment not having been paid, the servants or agents of the city, by direction of the water board, shut off the city water, on or about September 3, 1887. This was done in the street, and no trespass on the premises was committed thereby.

After evidence had been given by both parties as to the amount of damages sustained, the defendant asked the judge to rule that upon the facts the defendant was not liable in damages to the plaintiff; the judge refused so to rule, and found for the plaintiff in the sum of fifty-six dollars; and the defendant alleged exceptions.

The case was submitted on briefs, on January 20, 1890, and afterwards resubmitted, on September 24, 1890, on the same briefs, to all the judges.

*L. T. Trull & F. N. Wier*, for the defendant.

*G. F. Richardson & J. Davis*, for the plaintiff.

KNOWLTON, J.   The most important question in this case is whether a city or town which is authorized by statute to furnish water to its inhabitants, to be paid for by them, and which has received from a householder payment in advance for water to be furnished, and has arbitrarily cut off his supply, can be held liable in damages in an action at law.

By the St. of 1855, c. 435, and by subsequent statutes, the city of Lowell is authorized to take water from the Merrimack River, to take and hold lands, lay down and maintain aqueducts and pipes from the river into and about the city, and to do all other acts necessary to furnish the inhabitants of the city with water in their houses and elsewhere, with the right by § 3 to " regulate the use of said water, and establish, receive, and collect the prices or rents to be paid therefor."   The city has acted under this statute, and is supplying the people with water, in accordance with its provisions.   The plaintiff paid the established rates for a supply of water at its house, from April 1, 1887, to April 1, 1888; but on September 3, 1887, the water for the next preceding year not having been paid for, the city shut off the water from the plaintiff's premises.

It is argued that, after payment for the water, the plaintiff had only a revocable license to use it, and that the city violated no legal right in depriving the plaintiff of it.   It is also suggested that the city is merely performing a public service, and that the rates paid for water by individuals are special taxes, and that there is no contract or obligation on the part of the city to furnish water after a payment other than the public duty which it owes to all its inhabitants, and that the plaintiff's remedy, if any, is by writ of mandamus to compel the performance of this duty.

It is true that water supplied by cities and towns to their inhabitants, under our statutes, is, in a broad sense, furnished for public use, and that the constitutional authority to tax the people for this purpose is found in this fact. But while the right rests upon the general benefit to the community from having water for uses in which everybody has an interest, and from the existence of a supply accessible to the whole public, from which every individual may obtain water for his private use, cities and towns may, under statutes authorizing them to furnish water to their inhabitants, make reasonable contracts with individuals to supply them with water for a price to be paid. These contracts should not be inconsistent with the performance by the municipality of its general public duty, nor exceed the reasonable limits which may be reached in the performance of that duty. The general expenses of providing a supply of water, and the general benefits to the municipality from the uses of water which are strictly public, are paid for by general taxation of the inhabitants. There are no special benefits for which special assessments are made growing out of the introduction of the water. Special payments are made by individuals only when they are supplied with water at their request; and then only for what is furnished, and for the time it is furnished. While these may be called special assessments for the use, by individuals, of particular privileges, which are part of a general provision for all the people, it seems to be more consistent with the nature of the transactions to consider them as payments of the price of a commodity, sold under a general authority to provide for the public, and to sell upon request, in a reasonable way, to the persons who constitute the public. *Tindley* v. *Salem*, 137 Mass. 171, 172. That the defendant might, under the St. of 1855, c. 435, § 3, make reasonable express contracts with all the water takers in the city, as a convenient mode of supplying water and collecting pay for it, seems clear. The language which we have quoted from the statute implies that payment is to be made of the price of what is furnished, and that in the absence of an express contract, or of any regulation fixing the mode of collecting payment, there would be an implied contract on the part of one receiving water furnished by the city at his request to pay for it the price established.

In *Stock* v: *Boston*, 149 Mass. 410, it was assumed, both by the counsel and the court, under a similar statute, that the city of Boston, having complied with the request of an applicant to deliver water by pipes at his greenhouse, and presumably having been paid for it, was under a contract to continue the delivery.

The exceptions do not give the ordinances and regulations in full, but from the statute and such ordinances as appear a majority of the court are of opinion that, upon the application by a property owner to the city for a supply of water at his house for a reasonable time, and the acceptance of his application, and a receipt from him of payment in advance for the water, the city is under an implied contract to continue to furnish it during the term in the manner that the statute contemplates, so far as it can be done by a reasonable effort to perform the duty to the public, and to individuals, which it has assumed.

If no such contract were implied, still we think that the city owes him a duty beyond the public duty which it assumes by proceeding under the statute. For the purposes of this case it may be conceded that the duty of a city to furnish water on equal terms to all its inhabitants is general and public, and that for the breach of it no action at common law will lie in favor of an individual. But the receipt of his money in payment for water which he asks for is impliedly an undertaking to do for him as an individual a particular thing, in which no one else has any interest ; and it then becomes the duty of the city to do it, not only in the performance of its public duty to furnish water for the use of all the people in the aggregate, but in the performance of the particular undertaking to furnish him with water for his private use: This undertaking, founded in part on a consideration moving from him, imposes a special obligation solely for his personal benefit, and creates a liability at common law for neglect of the duty. The principle is analogous to that which enables one disturbed by a public nuisance to maintain a private action, in certain cases, for special damages which he suffers as an owner of property. *Wesson* v. *Washburn Iron Co.* 13 Allen, 95.

The water furnished for the year commencing April 1, 1886, was not paid for as required by the ordinance ; and, on Jan-

uary 13, 1887, the plaintiff, having a mortgage on the premises, entered to foreclose it for a breach of the condition, and afterwards continued in possession.  On June 3, 1887, the plaintiff paid the full amount of the water rates for the year commencing April 1, 1887, and on September 3, 1887, the water was shut off for non-payment of the rates assessed for the year commencing April 1, 1886.  The water had not been cut off during the year for which the unpaid assessment was made, and at the time it was cut off it was being furnished for a term for which the city had received from the plaintiff payment in advance.  The receipt of this money amounted to a contract, or created a duty, to furnish the plaintiff with the water throughout the year, in the manner contemplated by the statute, so far as it could be done by making a reasonable effort to perform the duty which the city had assumed, and precluded the city from afterwards cutting off the water, under its ordinance, on account of the failure of his predecessor in title to pay the rent for the former year.

Whether, if the water had been previously cut off under the ordinance, the plaintiff could have compelled the city to turn it on without payment of the amount due for the previous year, it is unnecessary to decide.          *Exceptions overruled.*