WILLIAM A. TURNER *vs.* REVERE WATER COMPANY.

Suffolk.    January 26, 27, 1898. — May 21, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Water Company — Refusal of Water Supply for Non-payment of Charges — Unreasonable and Void Regulation.*

A water company incorporated for the purpose of supplying the inhabitants of a town with water, which is authorized " to distribute water through said town and establish and collect rates therefor," has no right to refuse to supply water to the lessee of a house connected with its system on the ground that the owner of the house has not paid the rates for the previous year; and a regulation of the company that " in all cases of non-payment of rates fifteen days after same are due, the water may be shut off without further notice, and not be again turned on until rates are paid," so far as it may be construed as giving such a right, is unreasonable and void.

BILL IN EQUITY, filed February 5, 1897, to compel the defendant to supply the plaintiff with water, and to restrain it from preventing him from securing a suitable supply thereof.

At the hearing in the Superior Court, on an agreed statement of facts, a decree was entered restraining the defendant from refusing or neglecting to supply the plaintiff with a suitable supply of water so long as he continues to pay the regular water rates, and complies with all other reasonable and usual regulations of the defendant in the future, except those relating to the payment of the water rates remaining unpaid of previous owners

or tenants, and the defendant appealed to this court. The material facts appear in the opinion.

The case was argued at the bar in January, 1898, and afterwards was submitted on briefs to all the justices.

*B. N. Johnson*, for the defendant.

*C. R. Morse*, for the plaintiff.

LATHROP, J. On February, 1, 1897, the plaintiff hired a dwelling-house in Winthrop, from Clarissa C. Doane, its owner. Two days later, he applied to the defendant to have water turned on, and tendered the price charged from January 1, 1897, to January 1, 1898. The defendant refused to turn on the water, until the amount due to it for water supplied to Mrs. Doane from January 1, 1896, to October 10, 1896, had been paid. In October, 1893, one Emmet Doane, then owner of the house, made an application for water for the house, and paid the bills sent to him on July 1, 1894, and on July 1, 1895. On July 13, 1895, Emmet J. Doane conveyed the house to his mother, Clarissa C. Doane, who since that date has been the owner. The defendant received no notice of this conveyance until June 8, 1896. On July 1, 1896, the defendant sent a bill to Mrs. Doane for water during the year 1896. This bill was not paid, and on July 17, 1896, the defendant sent notice to Mrs. Doane that the water would be cut off unless the bill sent on July 1 should be paid immediately. On October 10, 1896, the water was shut off. The defendant refuses to turn on the water until the plaintiff pays the bills incurred by his landlord, because it has the following rule or regulation:

"The rates for use of water shall be payable on the first day of July in each year. All charges for specific supplies, or for fractional parts of the year, shall be payable in advance before the water is let on. In all cases of non-payment of rates fifteen days after same are due, the water may be shut off without further notice, and not be again turned on until rates are paid, and $1.50 additional for shutting off and letting on."

The Superior Court entered a decree restraining the defendant from refusing or neglecting to provide the plaintiff with a suitable supply of water, so long as he continues to pay the regular water rates, and complies with all other reasonable and usual regulations of the defendant in the future, except those

relating to the payment of the water rates remaining unpaid of previous owners or tenants.

The case is before us on appeal ; and the principal question presented is whether, if the rule applies to a case like this, it is reasonable.

The defendant was incorporated under the St. of 1882, c. 142, " for the purpose of furnishing the inhabitants of Revere with water for domestic and other purposes." By § 4, it was given the power to " establish and fix from time to time rates for the use of such water, and collect the same."

By the St. of 1884, c. 259, it was authorized to contract with the town of Winthrop to supply that town with water " for the extinguishment of fires and for other purposes, as authorized by said act." It was also authorized to " distribute water through said town, and establish and collect rates therefor in like manner as by said act it is authorized to do in the town of Revere." The amendment of its charter by the St. of 1887, c. 387, is immaterial to the case.

It is contended that the rule is a reasonable one, because similar rules have been established by ordinances in various cities, and in a statute of Georgia granting a charter to the city of Atlanta ; and that it has been decided to be reasonable in Pennsylvania. It is also argued that it is easy for a person hiring or buying a house to ascertain whether the debt of some former owner has been paid.

Of course, it cannot be disputed that, if the Legislature gives a lien upon the land to a water or gas company for unpaid dues, or uses words equivalent to giving a lien, it has the right to do so, and there is nothing more to be said.

In *Atlanta* v. *Burton*, 90 Ga. 486, the charter provided that the board of water commissioners shall have the power to " require the payment in advance for the use or rent of water furnished by them in or upon any building, place, or premises, and in case prompt payments shall not be made, they may shut off the water from such building, place, or premises, and shall not be compelled again to supply said building, place, or premises with water until said arrears, with interest thereon, shall be fully paid." It was held that the commissioners might furnish water on credit ; that the charter did not contemplate a

personal credit, because water was not furnished to persons but to buildings. " The charter did not contemplate nor intend that water should be furnished upon individual or personal credit, but that the supply should be made a charge upon the property to which the water was conveyed."

In *Girard Ins. Co.* v. *Philadelphia*, 88 Penn. St. 393, the words of the ordinance were that, after the water was turned off, it " shall not again be supplied or furnished to the said premises except upon payment of all arrears of water rent, and the sum of two dollars for expenses incurred." The opinion of the court states that the validity of the ordinance was conceded. The only question was whether, as the defendant had not sooner cut off the water on rates not being paid, the plaintiff was obliged to pay three years' rates due from a former owner, instead of the rates for one year, of which it had made a tender.

The case of *Commonwealth* v. *Philadelphia*, 132 Penn. St. 288, a gas case, simply considered the question as settled by the former case, and the opinion does not discuss it.

In *Appeal of Brumm*, 12 Atl. Rep. 855, a water case, the charter expressly provided that the real estate to which the water was furnished should be bound by the water rates.

The argument derived from foreign legislation and ordinances of cities in other States seems to us to be of little consequence in determining the question before us as to the effect of the regulation in this case. It may be noted, however, that in New York it is expressly provided that a gas company cannot refuse to turn on gas because a former occupant of the premises has not paid for the gas consumed by him. St. 1859 (N. Y.), c. 311, §§ 6, 9. 2 Rev. Sts. (N. Y. 1896), 1356, 1357.

In England it has been held, under the St. 10 & 11 Vict. c. 17, that, if a tenant does not pay water rates, the water company may sever the connection between the house and the main pipes, and that, if a new tenant occupies the house, he has the right to have the water turned on, on reconnecting the pipes; but until he does so, the water company is not liable to a penalty under the act for not supplying him with water. The remarks of Bramwell, L. J., on the point of not compelling the new tenant to pay an old debt, will be cited later. *Sheffield Waterworks Co.* v. *Wilkinson*, 4 C. P. D. 410.

Under the St. 50 & 51 Vict. c. 21, § 4, arrears of water rates where the rent does not exceed £20 may be recovered in a personal action against a purchaser of land, but the water cannot be cut off. *East London Waterworks Co.* v. *Kellerman*, [1892] 2 Q. B. 72.

So far as legislation is concerned in Massachusetts, the case of a gas company is covered. The Pub. Sts. c. 61, § 16, gives the company the right to " stop the gas from entering the premises " of a person neglecting to pay the amount due; and to enter the premises between certain hours and remove the meter, etc. Nothing is said about making subsequent users liable for old debts.

The St. of 1894, c. 299, makes it unlawful for a gas company to refuse to supply gas for any building or premises " for the reason that a gas bill remains unpaid by any previous occupant of said building or premises : provided the person or persons applying for gas shall not be in arrears to such corporation for gas previously furnished to or for said building or premises, or to or for any other building or premises."

So far as gas is concerned the question is settled.

As to water there was no general legislation until after this action was brought. The St. of 1898, c. 168, makes the same provision as to water that the St. of 1894, c. 299, made as to gas. The statute is not retroactive, and the question before us must be decided on general principles. There is much in our special legislation to show that we should not hold that one man is obliged to pay the debt of another, or that a water rate is a charge upon the land. The charter of the defendant is one of the simpler forms. The one which is generally found, and which applies to most of the cities and towns of this Commonwealth, after giving the right to regulate the price or rents for the use of the water, contains this provision : " The occupant of any tenement shall be liable for the payment of the price or rent for the use of the water in such tenement ; and the owner thereof shall be also liable, if, on being notified of such use, he does not object thereto." * This must mean by an action of con-

* St. 1846, c. 167, § 14, Boston; St. 1863, c. 163, § 13, New Bedford; St. 1864, c. 268, § 14, Salem ; St. 1865, c. 153, § 9, Cambridge; St. 1867, c. 60, § 7, Medford; St. 1867, c. 343, § 13, Roxbury; St. 1869, c. 462, § 12, Lynn;

tract, for it is simply a liability for rent; and in some charters the words are added, " to be collected in an action of contract in the name of the town."

Our Legislature has never authorized the making of an un‑ paid water rate a lien or charge upon the land. It has author‑ ized holding the owner liable, after notice, in some charters, for the debt of a tenant, but in no instance has a tenant been held liable for the debt of an owner. If the authority to create a lien or charge is to be derived from the right to make rules, there would have been no necessity to insert the words above cited.

In the absence of legislation, can a regulation such as the one in question, if it imposes a lien on land, be considered a reason‑ able one? We are of opinion that this question must be an‑ swered in the negative.

In *Lumbard* v. *Stearns*, 4 Cush. 60, it was declared by Chief Justice Shaw that a private water company, by accepting its charter, would abuse its franchise if it failed to furnish water,

---

St. 1871, c. 307, § 8, Woburn; St. 1871, c. 133, § 17, Fall River; St. 1872, c. 343, § 14, Brookline; St. 1872, c. 188, § 9, Concord and Lincoln; St. 1872, c. 62, § 9, Holyoke; St. 1872, c. 79, § 11, Lawrence; St. 1872, c. 344, § 14, Newton; St. 1872, c. 345, § 10, Springfield; St. 1872, c. 336, § 14, West Roxbury; St. 1872, c. 337, § 11, Waltham; St. 1873, c. 274, § 7, Lexington; St. 1873, c. 76, § 9, Natick; St. 1873, c. 322, § 9, Westfield; St. 1874, c. 191, § 9, Danvers; St. 1874, c. 256, § 9, Marlborough; St. 1874, c. 125, § 10, Newton; St. 1875, c. 199, § 14, Watertown; St. 1881, c. 206, § 8, Fra‑ mingham; St. 1884, c. 256, § 12, Cambridge; St. 1887, c. 416, § 11, Malden.

The following charters have the " occupant and owner " clause, but add that the water rates are " to be collected in an action of contract in the name of the city." St. 1891, c. 348, § 9, Haverhill; St. 1891, c. 401, § 13, Quincy; St. 1894, c. 187, § 12, Stoneham; St. 1897, c. 473, § 10, Stoneham.

The following charter provides that the notice of objection *to* the owner must be in writing: St. 1875, c. 217, § 9, Taunton.

The following charters provide that the notice of objection *from* the owner must be in writing: St. 1876, c. 98, § 9, Clinton; St. 1881, c. 174, § 9, Weymouth.

The following charter provides that both the notice to the owner and the objection from the owner must be in writing: St. 1875, c. 158, § 6, Rock‑ port Water Co.

The following charter provides: " The owner of any tenement shall be liable for the payment of the rent for the use of the water in such tenement, to be collected in an action of contract in the name of the city." St. 1892, c. 384, § 12, Chicopee.

and that it was its duty to supply all who should apply for water on reasonable terms. See also *Young* v. *Boston*, 104 Mass. 95.

The ordinance of the city of Lowell, which was before the court in *Merrimack River Savings Bank* v. *Lowell*, 152 Mass. 556, was much more explicit than the one before us. It provided that, in case the water was cut off for non-payment of rates, it should not be let on " either for the present or any subsequent occupant," except upon payment of the amount due. The point decided was, that, after the city had received the money for a year's use of the water, it could not cut it off during the year because a former occupant had not paid his bill. There is no intimation in the opinion that a water rate constitutes a charge upon land, and the case goes upon the ground of contract. Indeed, it is said by Mr. Justice Knowlton, speaking of payments of rates : " It seems to be more consistent with the nature of the transactions to consider them as payments of the price of a commodity, sold under a general authority to provide for the public, and to sell upon request, in a reasonable way, to the persons who constitute the public."

It may be desirable that a water company or a gas company should have an easy way of collecting its debts, but we see no reason why it should be enabled by the court to collect a debt from one who is not a party to the contract, when it sells its commodity on credit. The Legislature may give such a company a lien, as it has given one to mechanics. We have no doubt that pay may be demanded in advance, as is done in Boston, though whether the owner of the house could not have the water shut off during the year, and recover for what he had not used, may be considered an open question. See *Rockland Water Co.* v. *Adams*, 84 Maine, 472. In this case, the owner of a house had paid bills which contained the words, " one year's rent will be required in all cases." During a subsequent year he used the water for four months only, and was sued for a year's supply. It was held that the regulation was unreasonable and void, and that the plaintiff could not recover unless the defendant expressly assented to the regulation, and that payment of former bills was not such assent. See also *Wood* v. *Auburn*, 87 Maine, 287, where there are some strong remarks in favor of the consumer.

We have also no doubt that a water company may demand a deposit, as is required by the Boston Gas Light Company, where it does not know the consumer. This was held to be reasonable in the case of a gas company in *Williams* v. *Mutual Gas Co.* 52 Mich. 499. See also *Shepard* v. *Milwaukee Gas Light Co.* 6 Wis. 539, and 15 Wis. 318.

The right to shut off water or gas, if a bill is not paid, is undoubted, so far as the consumer is concerned. *People* v. *Manhattan Gas Light Co.* 45 Barb. 136. *McDaniel* v. *Springfield Waterworks Co.* 48 Mo. App. 273. *Sheward* v. *Citizens' Water Co.* 90 Cal. 635. *Shiras* v. *Ewing,* 48 Kans. 170.

If gas is supplied to the owner of different houses under separate contracts, failure to pay the gas bill on one house does not authorize the cutting off of the gas from the other. *Gas Light Co.* v. *Colliday,* 25 Md. 1. See also *Lloyd* v. *Washington Gas Light Co.* 1 Mackey, 331.

In *American Water Works Co.* v. *State,* 46 Neb. 194, where a consumer of water who was in default, after the water was turned off, tendered his arrears due, but refused to pay one dollar, as required by regulation of the company for turning the water on, the court by mandamus compelled the company to turn the water on, holding the regulation to be unreasonable. See also *Smith* v. *Birmingham Water Works Co.* 104 Ala. 315.

It is difficult to see how a lien or charge upon land can be created, except by the written consent of the owner or by an act of the Legislature, when it is provided by the Pub. Sts. c. 120, § 3, " and no estate or interest in land shall be assigned, granted, or surrendered, unless by such writing [i. e. an instrument in writing signed by the grantor] or by operation of law."

Water is a necessity, and without it a house cannot at the present time be occupied in our cities. It must be obtained from a water company, and to compel a man to pay another's debt in order to obtain it seems to us a result that ought not to be reached. Water is even a greater necessity than gas, for there are other means of lighting in use; yet in the case of gas there is a decision directly in point.

In *New Orleans Gas Light & Banking Co.* v. *Paulding,* 12 Rob. (La.) 378, the plaintiff refused to supply the defendant with gas unless he paid an unpaid bill contracted by a former

owner of the building.    He promised to do so, in order to obtain the gas.    The plaintiff turned on the gas, and afterwards sued him on his promise to pay the amount due from the former owner.    The court held that the promise was void, and that the plaintiff had no right to require such a payment.

In *Sheffield Waterworks Co.* v. *Wilkinson*, 4 C. P. D. 410, 421, 422, it is said by Bramwell, L. J.: " My judgment does not proceed upon this, that the appellants have a right to insist upon the communication with their main remaining severed, until their claim for rates due from the preceding occupier is satisfied.    I do not think they have such right.    That was, no doubt, the notion upon which they acted ; but in my opinion it is not sustainable.    The learned magistrate who has stated this case has argued it extremely well ; and I agree with him in thinking that it was not the intention of the legislature that the undertakers should be at liberty to withhold the supply of water from the respondent's premises until the arrears due from some one else are paid.    I also agree with him in thinking that ample provision is made for their security by enabling them to demand the rates in advance, without having what may be called something in the nature of a lien upon the property itself for by-gone rates."

It is suggested that a lessee or purchaser can easily protect himself, by finding out whether the water has been paid for. The answer to this is obvious.    The records of a water company are not public records, to which any one has access.    If inquiry be made, there is no law to compel the company to give a certificate in writing.    The answer would be a verbal one.    If there should be a controversy as to what it was, it would be a matter to be proved.    An answer in the negative would only operate by way of estoppel, and this would have to be proved.    Suppose it turned out that there was an old bill, which the clerk who gave the answer supposed had been paid, when in fact it had not been, and the company should show that the clerk had no authority to answer the question.    Is the man who proposes to buy a house to be kept from completing the purchase until all these matters are determined by a court of law ?    See *Wood* v. *Auburn*, 87 Maine, 287, 292.    It seems to us that, if an unpaid gas or water bill is made a charge upon the

land without authority of a statute, there are numerous diffi-
culties to be encountered ; and that the better rule is that any,
such regulation as that before us, if construed as the defendant
seeks to construe it in this case, is unreasonable and void.

*Decree affirmed.*