# Richmond.

## MORDAUNT ETHEREDGE V. CITY OF NORFOLK.

### September 29, 1927.

1. MUNICIPAL CORPORATIONS—*Waterworks—Landlord and Tenant—Personal Liability of Owner of Property for Water Consumed by Tenant—Constitutionality of Ordinance.*—An ordinance which seeks to make the owner of premises personally liable, irrespective of contract, for water consumed upon the owner's premises by a lessee thereof, is repugnant to the Fourteenth Amendment of the Constitution of the United States and of section 11 of the Constitution of Virginia, in that it deprives such owner of his property without due process of law, unless a lien is given on the premises by statute or there is, at least, some statutory authority therefor by virtue of the charter or otherwise.

2. MUNICIPAL CORPORATIONS—*Waterworks—Municipality Stands upon Same Footing as a Private Corporation—Ordinances Have the same Force as By-laws of Private Corporations.*—When a municipal corporation engages in the business of furnishing water to its inhabitants by means of a permanent waterworks it stands on the same footing, and has exactly the same right to make and enforce reasonable rules and regulations, as a private corporation upon whom a franchise for that purpose has been conferred; and, therefore, an ordinance prescribing such regulations has the same force, and no more, as a by-law of a private corporation whose powers are of like character and conferred for the same purpose.

3. MUNICIPAL CORPORATIONS—*Police Power—Health Regulations.*—A State has the right, in the exercise of its police power, to adopt such regulations as are reasonable and necessary for the protection of the health of its inhabitants.

4. POLICE POWER—*Definition.*—The police power has never been exactly defined or circumscribed by fixed limits, but has been described as the law of necessity and as the power of self-protection on the part of the community. And this doctrine may be said to furnish the key to what is within and what is without the boundaries of the police power; not that a police regulation to be legitimate must be an absolute essential to the public welfare, but the exigency to be met must so concern such welfare as to suggest, reasonably, necessity for the legislative remedy.

5. MUNICIPAL CORPORATIONS—*Waterworks—Ordinance Holding Landlord Responsible for Payment of Water Rent—Police Power—Constitutionality—Case at Bar.*—An ordinance of the city of Norfolk required that the owner of premises should see that the premises were connected with the city sewer system, and should cause the water rent to be paid. The water bureau of the city under this ordinance adopted the method of charging and billing all water rents to the premises, instead of to the owner or occupant of the premises. The municipality attempted to sustain the validity of the regulation on the ground that it would be unhealthful to live in a house from which the water had been cut off, and for that reason the property owner should be required to pay the rent in order to conserve the health of his tenant.

*Held:* That the regulation was unreasonable and void. It would be just as unreasonable, as a police regulation, to require the landlord to pay the water rent as it would be to require him, in the absence of contract or statute, to furnish his tenant with any other necessity, and the regulation was also unreasonable as it required the owner to pay the delinquent water bill of a former tenant and denied an incoming tenant the use of the water to which he was entitled when he occupied the premises and offered to comply with the regulations required of consumers.

6. MUNICIPAL CORPORATIONS—*Waterworks—Ordinance Requiring Landlord to be Responsible for Water Rents—Police Power—Case at Bar.*—In the instant case a city ordinance provided that the owner of premises should cause the water rent on the premises to be paid and when the premises were connected with the sewer system should see that the water should not be cut off.

*Held:* That this provision was obviously designed to enforce the collection of water rents and was not a health regulation.

7. POLICE POWER—*Statute or Ordinance Purporting to have been Enacted to Protect Public Health but Having no Substantial Relation to Public Health.*—If a statute or ordinance purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is unconstitutional.

8. PUBLIC SERVICE CORPORATIONS—*Charges—Liability of Premises.*—In the absence of a statutory provision, a municipal corporation, private water company, light company, or gas company, has no lien or charge upon the premises to which water, light or gas is furnished, and a regulation of such corporation attempting to impose a charge upon the premises so as to affect the right of subsequent occupants to be supplied will, unless authorized by statute, be invalid as unreasonable.

9. PUBLIC SERVICE CORPORATIONS—*Landlord and Tenant—Tenant's Right*

*to be Served.*—A tenant of a building is himself entitled to be furnished with water, light and gas and a public service corporation or municipality must deal with him as its customer, and has no power to require that the landlord become responsible for the charges or consent that they be a charge on the premises in the absence of contract or statute.

10. PUBLIC SERVICE CORPORATIONS—*Landlord and Tenant—Tenant's Right to be Served.*—When water, light or gas is furnished a tenant, the municipal corporation or public service corporation has no right to refuse, after the termination of the tenancy, to furnish water or light to the landlord or his subsequent tenants because the prior tenant was in default in the payment for water or light supplied to him in the absence of contract or statute.

11. PUBLIC SERVICE CORPORATIONS—*Water, Light or Gas—Charge upon the Premises—Statute.*—A statute may make a charge for water, light or gas furnished a charge upon the premises and authorize the supply to be cut off, in case there has been default in payment, and this is sometimes done in the charter of a municipality.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Wm. G. Maupin,* for the plaintiff in error.

*R. W. Peatross,* and *George Read Martin,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

The city of Norfolk is authorized by its charter to provide an "adequate water supply for said city" and "to establish, impose, and enforce water rates."

A certain ordinance passed by the city, known as section 156 of the Norfolk City Code, 1920, reads as follows:

"Section 156.   Both owner and occupant responsible for supply of water to premises connected with city sewer.

"The owner of any premises which are required by the city ordinances to be connected with the city sewer shall see that water from the waterworks of the city is connected with said sewerage on said premises, and not cut off therefrom at any time, except for necessary repairs, while said premises are occupied, and such owner shall cause the water rent for the use of water on said premises to be paid the division of water supply when due.

"Any person occupying any premises required by the city ordinances to be connected with the city sewer shall see that the water from the waterworks of the city is connected with the sewer on said premises and cut off therefrom, and no person shall occupy any premises required by the ordinances of the city to be connected with the city sewer if the sewer on the premises is not connected with, or is cut off from, water from the waterworks of the city, except when necessary for repairs.

"No person shall use a water closet which is not connected with water from the waterworks of the city, or which is cut off therefrom.

"Any violation of this section shall be punished by a fine of not less than twenty dollars nor more than one hundred dollars for each offense.

"Nothing contained in this section shall be construed as prohibiting the department of public works from cutting off water from any premises upon the failure of the owner or tenant to pay the water rent."

On December 21, 1924, the city adopted an ordinance, amending the then existing ordinance, entitled "An ordinance prescribing a ready-to-serve charge for water consumers, fixing the rates to be paid for water," &c., by which it was provided that each person using

water furnished from the city water system should pay a flat quarterly rate wherever a meter was installed, and an additional charge per quarter for each additional 1,000 gallons of water consumed, varying with the quantity used.    This ordinance goes on to provide that a penalty of ten per cent shall be added to the bill in case it is not paid on or before the 15th day of the month in which the bill is rendered, and further declares that, "Whenever any bill for service or water shall remain unpaid thirty days after the first of the month in which the same is due the bureau of water shall cut off the water from said premises, and shall not turn the same on again until all delinquent charges therefor have been paid in full."

Claiming its right to do so by virtue of the provisions of the above ordinances, the water bureau of the city has pursued the method of charging and billing all water rents to the premises supplied with water, instead of to the owner or occupant of the premises. If the bill is not paid, no attempt is made to collect it from the occupant or consumer, as such, but the owner of the premises alone is held responsible, and if he refuses to pay the water is shut off until the delinquent bill is settled. It seems that this system has given rise to considerable friction and controversy between property owners and the city authorities whenever a tenant has vacated the leased premises leaving a delinquent water bill.

With this preliminary statement, the facts of the case presented by the record may be fairly stated in the language of the petition for writ of error, as follows:

"Mordaunt Etheredge bought in January, 1914, and has owned ever since, the premises No. 300 Park avenue, Norfolk.   He has never occupied the premises; never consumed any water therein; never made any contract with the city for water to be consumed therein,

and never paid for any water so consumed. One Mrs. C. DeWaters entered the premises under a written lease from Etheredge and occupied them from September 1, 1924, until September 30, 1925, and in said lease she covenanted to pay 'all water rents levied, or to be levied, thereon during the term.'

"Mrs. DeWaters moved out at the expiration of her term. It afterwards developed that a bill for consumption of water furnished said premises during the period beginning May 8, 1925, and ending August 6, 1925 (while Mrs. DeWaters occupied them), amounting to $12.38, remained unpaid.

"Etheredge knew nothing about the unpaid water bill until after Mrs. DeWaters moved out; a new tenant was secured, who, upon going to the water department to arrange for water, was there advised of the unpaid bill and told that unless it was paid water would be cut off. The new tenant reported the situation to Etheredge and declined to move in unless the matter was adjusted.

"Thereupon Etheredge took the matter up with the city authorities and received from them a letter threatening to cut off the water unless the delinquent DeWaters' bill was paid at once. He notified the attorney representing the Norfolk Real Estate Board (of which Etheredge was a member), and the attorney notified the city that if the threatened action was taken mandamus proceedings and a suit for damages would be brought.

"The water was not cut off, but this proceeding—a motion for the recovery of money—was instituted by the city of Norfolk against Mordaunt Etheredge for the said sum of $12.38 represented by the delinquent water bill in question.

"It should be stated that this amount of $12.38 was

made up of two items.    One item of $2.50 represented the 'ready-to-serve' or 'advance quarterly' charge; and the balance, $9.88, was for the consumption of water, as shown by meter readings."

Etheredge having agreed to pay the ready-to-serve charge, paid into court the said sum of $2.50, and both parties waiving a jury all matters of law and fact were submitted to the court.    A judgment for $12.38, less the aforesaid credit of $2.50 was entered in favor of the city, and thereupon Etheredge obtained this writ of error.

[1] The city's right to recover in this case being based solely upon the provisions of section 156 of the Norfolk City Code, the specific question presented for decision is whether that ordinance, insofar as it seeks to make the owner of premises personally liable, irrespective of contract, for water consumed upon such owner's premises by a lessee thereof, is repugnant to the fourteenth amendment of the Constitution of the United States and to section 11 of the Constitution of Virginia, in that it deprives such owner of his property without due process of law.

[2] The books abound in adjudications involving various questions pertaining to the enforcement of water rents and the respective rights of municipalities and private companies operating waterworks on the one side and the owner or occupant of the premises on the other; and while the question generally presented in these cases has been as to the reasonableness and validity of a specified ordinance or regulation and the right of the municipality or water company, acting under such ordinance or regulation, to shut off the water from the premises, and not the precise question of the owner's personal liability, as presented here, certain rules have been enunciated by the courts which

may now be considered as firmly established. For instance, it seems to be agreed by all the authorities that when a municipal corporation engages in the business of furnishing water to its inhabitants by means of a permanent waterworks, it stands on the same footing, and has exactly the same right to make and enforce reasonable rules and regulations as a private corporation upon whom a franchise for that purpose has been conferred; and, therefore, an ordinance prescribing such regulations has the same force, and no more, of a by-law of a private corporation whose powers are of like character and conferred for the same purpose. 1 Farnham on Waters and Water Rights, section 158, page 814; 27 R. C. L. page 1408; 3 Dillon on Municipal Corporations, page 2204; *Brumm* v. *Pottsville Water Company* (Pa.), 12 Atl. 855; *State* v. *Albuquerque Water Supply Co.*, 19 N. M. 27, 140 Pac. 1056, L. R. A. 1915A, 242; *Girard Life Ins. Co.* v. *Philadelphia*, 88 Pa. 393; *St. Louis Brewing Association* v. *City of St. Louis*, 140 Mo. 419, 37 S. W. 525, 41 S. W. 911; *Chicago* v. *Northwestern Mutual Life Ins. Co.*, 218 Ill. 40, 75 N. E. 803, 1 L. R. A. (N. S.) 770.

The authorities are also practically unanimous that the regulation of a water company or ordinance of a municipality which requires the property owner to pay a delinquent bill for water furnished the tenant of the premises, which the owner has not contracted to pay, is unreasonbale and void, unless a lien is given on the premises by statute, *or there is at least some statutory authority therefor by virtue of the charter, or otherwise.* *Turner* v. *Revere Water Company*, 171 Mass. 329, 50 N. E. 634, 40 L. R. A. 657, 68 Am. St. Rep. 432; *Covington* v. *Ratterman*, 128 Ky. 336, 108 S. W. 297, 17 L. R. A. (N. S.) 923; *Burke* v. *Water Valley*, 87 Miss. 732, 40 So. 820, 112 Am. St. Rep. 468;

*McDowell* v. *Avon-By-the-Sea Land and Improvement Co.*, 71 N. J. Eq. 109, 63 Atl. 13; *Chicago* v. *Northwestern Life Ins. Co.*, 218 Ill. 40, 75 N. E. 803, 1 L. R. A. (N. S.) 770; *Scotillo* v. *Water Supply Co.*, 19 N. M. 27, 140 Pac. 1056, L. R. A. 1915A, 242; *Wood* v. *Auburn*, 87 Me. 287, 32 Atl. 906, 29 L. R. A. 376; *Millville Improvement Co.* v. *Millville Water Co.*, 92 N. J. Eq. 480, 113 Atl. 516; *Sheldon* v. *Hamilton*, 22 R. I. 230, 47 Atl. 316, 84 Am. St. Rep. 839; *Waldron* v. *International Water Co.*, 95 Vt. 135, 112 Atl. 219, 13 A. L. R. 340; *Linne* v. *Bredes*, 43 Wash. 540, 86 Pac. 858, 6 L. R. A. (N. S.) 707, 117 Am. St. Rep. 1068, 11 Ann. Cas. 238; 27 R. C. L. page 1455; 16 R. C. L. pages 820-22. Authorities to this effect might be multiplied.

"In the absence of legislative authority therefor a regulation providing that the water supply may be shut off for nonpayment is unreasonable insofar as it may be construed to authorize cutting off the supply when a tenant refuses to pay delinquent water rents owed by a former occupant or owner, as to do so would compel one man to pay another's debt in order to obtain a necessity. * * * The right of a municipal corporation or water company to compel a property owner to pay for water furnished to a former occupant seems to depend on the existence of a lien against the property." 27 R. C. L. page 1455.

Neither the charter of the city of Norfolk nor any other statute provides a lien on property for water rents; nor is there any statutory authority, so far as we are advised, for the ordinance in question. This being so, said ordinance, insofar as it attempts to hold a property owner personally responsible for the payment of arrearages for water consumed by the tenant on the premises, is unreasonable and void; unless, as

contended by counsel for the city, that provision of the ordinance is necessary for the protection of the public health, and, for that reason, a valid exercise of the police power of the city.

[3, 4] That the city of Norfolk has the right, in the exercise of its police power, to adopt such regulations as are reasonable and necessary for the protection of the health of its inhabitants is, of course, beyond question. As has often been said, the police power has never been exactly defined or circumscribed by fixed limits; but, "The police power has been described as the *law of necessity* and as the power of selfprotection on the part of the community. This doctrine may be said to furnish the key to what is within and what is without the boundaries of such power; not that a police regulation to be legitimate must be an absolute essential to the public welfare, but that the exigency to be met must so concern such welfare as to suggest, reasonably, *necessity* for the legislative remedy." 6 R. C. L. page 187. (Italics supplied.)

In *Bowman* v. *Virginia State Entomologist,* 128 Va. 351, 105 S. E. 141, 12 A. L. R. 1121, the court quotes from 1 Lewis on Eminent Domain, section 249, as follows:

"The Supreme Court of the United States, which is the final arbiter upon these questions, says: 'The validity of a police regulation, whether established directly by the State or by some public body acting under its sanction, must depend upon the circumstances of each case and the character of the regulation, whether arbitrary or reasonable, and whether really designed to accomplish a legitimate public purpose. * * * If the means employed have no real substantial relation to the public objects which government may legally accomplish, if they are arbitrary

and unreasonably beyond the necessities of the case, the judiciary will disregard mere forms and interfere for the protection of rights injuriously affected by such illegal action.' "

In *Lochner* v. *New York*, 198 U. S. 45, 25 S. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133, the Supreme Court of the United States says:

"It must, of course, be conceded that there is a limit to the valid exercise of the police power by the State. There is no dispute concerning this general proposition. Otherwise the fourteenth amendment would have **no** efficacy and the legislatures of the States would have unbounded power, and it would be enough to say that any piece of legislation was enacted to conserve the morals, the health or safety of the people; such legislation would be valid, no matter how absolutely without foundation the claim might be. The claim of police power would be a mere pretext—become another and delusive name for the supreme sovereignty of the State to be exercised free from constitutional restraint. * * * In every case * * * the question necessarily arises: Is this a fair, reasonable, and appropriate exercise of the police power of the State, or is it an unreasonable, unnecessary and arbitrary interference with the right of the individual? * * * The mere assertion that the subject relates though but in a remote degree to the public health does not necessarily render the enactment valid. The act must have a more direct relation, as a means to an end, and the end itself must be appropriate and legitimate * * *."

The city's contention—that the ordinance was enacted in the exercise of the police power to protect the public health—is based upon the following facts:

[5] That a city ordinance requires all buildings in the city adjacent to a sewer line to be connected there-

with, and under the building regulations connections
with the city sewer are required to be made with traps
so designed as to prevent, when filled with water,
sewer gases, and disease carrying insects from entering
the house; that all the water which enters the house
through the meter, and not consumed, passes out
through these traps; that sewer gas is a noxious and
poisonous gas, and unless the sewer system of the
house is connected with the water system the house
would be uninhabitable.

It is not claimed, and no attempt was made to show,
that the building belonging to Etheredge is not con-
nected with the city sewer, or that the connections
are not constructed according to the building regu-
lations. Nor is it claimed that it would be injurious
to the public health to shut off water from an unoc-
cupied building. The whole contention, then, resolves
itself into this: That it would be unhealthful to live
in a house from which the water had been cut off, and
for that reason the property owner should be required
to pay the water rent in order to conserve the health
of his tenants. We think it would be just as un-
reasonable as a police regulation to require him to do
this as it would be to require him, in the absence of
contract, to furnish his tenant with any other necessity
which would conduce to the preservation of the ten-
ant's health. The regulation is also unreasonable in
its effects, because it requires the property owner—as
in this case—to pay the delinquent water bill of a
former tenant, which he is under no obligation to pay,
in order to secure another tenant and keep his premises
occupied; and denies the incoming tenant the use of
the water to which he is entitled when he occupies the
premises and offers to comply with the regulations
required of consumers. The language of the court in

*Waldron* v. *International Water Company*, 95 Vt. 135, 112 Atl. 219, 13 A. L. R. 340, is pertinent here:

"A regulation of a water company unauthorized by statute, requiring a landlord to pay for water is unenforceable * * * * *Brass* v. *Rathbone*, 153 N. Y. 435, 47 N. E. 905; *Stein* v. *McArdle*, 24 Ala. 344, Neither can he be held liable for a bill of a tenant. *McCarthy* v. *Humphrey*, 105 Iowa, 535, 75 N. W. 314. Nor can his premises be subjected to a lien for such charges. *Turner* v. *Revere Water Company*, 171 Mass. 329, 50 N. E. 634, 40 L. R. A. 657, 68 Am. St. Rep. 432. * * * A rule that the water company will deal only with the owners of property occupied by tenants, if valid, would enlarge the obligation of the landlord to the tenant to the extent of requiring the former to furnish water and pay the water assessment in order that the premises may be occupied, and, in case the landlord was in arrears, would deny the tenant the right of water service to which he was entitled unless he paid the landlord's debt."

Nor do we see any necessity for such a provision. It is important, of course, to the financial interests of the city that it should collect its water charges and derive sufficient revenue therefrom to maintain its waterworks; and it is true that the plan it has adopted, of charging such bills to the premises and holding the landowner responsible under any and all circumstances, under the penalty of making his house uninhabitable by cutting off the water, furnishes a simple and easy way of collecting its water rents. But, as said by the court in *Turner* v. *Revere Water Company, supra:* "It may be desirable that a water company or a gas company shall have an easy way of collecting its debts, but we see no reason why it should be enabled by the court to collect a debt from one who is not a party to the contract, when it sells its commodity on credit."

The city can adopt any reasonable plan it chooses to collect its water rents from the consumers who obligate themselves to pay them, in lieu of the present arbitrary and unreasonable policy of attempting to exact such rents from those who are in no way liable, in the absence of State legislative enactment making them so. In fact, under its present ordinances, if a tenant or any consumer fails to pay his water bill, the city has the lawful right to cut off the water until he does pay it, and, if he continues to occupy the premises with the water shut off, can subject him to a fine; which of itself seems not only a proper method of enforcing payment, but a reasonable police regulation as well.

[6] Reading the two ordinances hereinbefore referred to together, it is obvious that the provision of section 156 of the Norfolk City Code which is now under consideration was designed to enforce the collection of water rents and not as a health regulation. It has at the most only a remote connection with the public health—a connection by far too remote to justify us in sustaining it as a police regulation on that ground. We therefore conclude that said ordinance, insofar as it requires a property owner, in the absence of contract, to pay rent due the city of Norfolk for water consumed on the premises by the tenant, is not only unreasonable and unnecessary but foreign to the purpose alleged, and same is therefore unconstitutional and void. In this case it constitutes an arbitrary infringement upon the rights of Mr. Etheredge.

"When a health law is challenged by the courts as unconstitutional on the ground that it arbitrarily interferes with personal liberty and private property without due process of law, the courts must be able to show that it has at least in fact some relation to the public health, and that the public health is the end

actually aimed at, and that it is appropriate and adapted to that end." *In re Jacobs*, 98 N. Y. 98, 50 Am. Rep. 636.

"A law which assumes to be a police regulation but deprives the citizen of the use of his property under the pretense of preserving the public health, the public safety, comfort or welfare, when it is manifest that such is not the real purpose of the regulation, will be set aside as a clear and direct invasion of the right of property without any compensatory damages. Cooley's Const. Lim. 248." *Spann* v. *City of Dallas*, 111 Tex. 350, 235 S. W. 513; 19 A. L. R. 1387.

[7] "The well settled rule is that if a statute purporting to have been enacted to protect the public health, the public morals or the public safety has no real substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge and thereby give effect to the Constitution." *Hennington* v. *State of Georgia*, 163 U. S. 299, 16 S. Ct. 1086, 41 L. Ed. 166.

Before concluding this opinion we feel that, inasmuch as we are constrained to differ with the learned judge of the trial court, the case of *City of East Grand Forks* v. *Luck*, 97 Minn. 373, 107 N. W. 393, 6 L. R. A. (N. S.) 198, 7 Ann. Cas. 1015, upon which his opinion is based, should be referred to. In that case suit was brought by the city against the property owner to recover a bill due the city for light furnished the tenant. An examination of the court's opinion in the case will show that the owner was held liable on the ground that the charter granted the city by act of the State legislature expressly provided that the owner of private property as well as the lessee shall be liable to the city for light and water used on the premises, and that the rates and rents therefor may be recovered in

an action against such owner or lessee; the theory of the court being that the lease was made with reference to the provisions of the charter and the owner was bound under an implied contract. While this decision is in conflict with what seems to be the greater weight of opinion, holding that the owner is not bound in the absence of a statutory lien, we do not consider it is necessary to concern ourselves in this case as to which line of cases should be followed, for the reason that the charter of the city of Norfolk contains no such provision as that involved in the *Luck Case,* nor is there any other statute giving said city such authority.

A full and detailed statement of the rules applicable to cases of this character will be found in 16 R. C. L. section 316, pages 820-22, from which we quote the following:

[8-11] "In the absence of a statutory provision a. private water or light company has no lien or charge upon the premises to which water or light is furnished; * * * and a regulation of a water or light company attempting to impose a charge upon the premises *so as to affect the right of subsequent occupants to be supplied will, unless authorized by statute, be invalid as unreasonable.* The same has been held to be true, in the absence of statutory sanction, when a municipality is engaged in furnishing water or light to its inhabitants. It is held that a tenant of a building is himself entitled to be furnished with water and light, and a water company must deal with him as its customer; *and has no power to require that the landlord become responsible for the charges, or consent that they be a charge on the premises;* *. * * * and likewise when water or light is furnished a tenant the company has no right to refuse, after the termination of the tenancy, to furnish water or light to the landlord or his subsequent tenants be-

cause the prior tenant was in default in the payment for water or light supplied to him; in other words, the charges for water or light furnished a tenant does not create any charge upon the reversion or affect the duty of the company to supply the landlord or his subsequent tenants.  On the other hand, a *statute* may make the charge for water or light furnished a charge upon the premises and authorize the supply to be shut off, in case there has been default in the payment;   *   *   *   and this has sometimes been done in the *charter* of a municipality in cases where the municipality is authorized to engage in the supply of water and light to its inhabitants   *   *   *.  *Under such a provision* the municipality has been held justified when default has been made in the payment for water or light furnished a tenant, in refusing, after the termination of the tenancy, to furnish water or light to the landlord or his subsequent tenants unless the prior charges are paid, or entitled to hold the premises or the landlord personally liable for water and light furnished the tenant."   (Italics supplied.)

For the foregoing reasons the judgment of the court below will be reversed, and judgment entered here for the defendant therein.

*Reversed.*