TITLE GUARANTEE AND TRUST COMPANY, Plaintiff, v. 457 SCHENECTADY AVENUE, INC., and Others, Defendants.

Supreme Court, Kings County, February 19, 1932.

*Harry L. Thompson* [*John C. O'Malley* of counsel], for the plaintiff.

*Maires & Maires* [*Thomas Maires* of counsel], for the petitioner New York Water Service Corporation.

*Harold L. Turk* [*Murray Lehman* of counsel], for the receiver.

DIKE, J. A private water company is here seeking to have its bill for unpaid water charges, incurred by the owner of said premises for water, supplied to the owner between the dates of March 2, 1931, and December 18, 1931, paid by a receiver in foreclosure of a mortgage upon the premises. The receiver was appointed on December 15, 1931, in a second mortgage foreclosure action, and his receivership has been extended, for the benefit of the plaintiff, Title Guarantee and Trust Company, on December 16, 1931. The receiver offers to pay all *current* bills for water furnished to the tenants in said apartment house, having eighty-five apartments, which is now under his control, from the date of his appointment, but strenuously objects to the water company carrying out its threat to cut off the supply of water if he, as such receiver, refuses to pay for *past due* service under the contract made between the owner of the premises and the said water company.

Who should pay the bill? May the water company avail itself of the provision in the contract between the water company and the owner of the premises and shut off the water upon the refusal of the receiver to liquidate the bill for services prior to his appointment?

The petitioning corporation, the New York Water Service Corporation, is the result of several mergers of companies engaged in the business of furnishing water to the defendant, 457 Schenectady Avenue, Inc., who became and still is the owner of these premises upon which a six-story apartment house was erected and accommodates upwards of eighty-five families. It was in February, 1931, that the defendant 457 Schenectady Avenue, Inc., made written

application to the petitioner for the service of water to be furnished and delivered by meter to said premises at a stipulated price. In its application defendant agreed to " continue to pay " for all water so furnished up to the time that a written notice should be given by the owner of a change of ownership. Since March 2, 1931, therefore, to the present time the petitioner has furnished water to said apartment house. The bill for that service to date is $711.80.

On December 15, 1931, the plaintiff herein, Title Guarantee and Trust Company, began this action to foreclose a first mortgage of $350,000, covering said premises, dated May 18, 1928. On December 16, 1931, an order was duly made in this action continuing one Edward Ward McMahon, who had been appointed and had qualified as receiver in another action, as receiver of the rents and profits in the present action, and he is now acting in that capacity.

A demand for the payment of this indebtedness has been made by the petitioner, both upon the plaintiff and the defendant, for the balance due. The receiver has offered to pay so much of said balance as has accrued since December 15, 1931, the date of his appointment.

The petitioner, therefore, moves now for an order authorizing it to shut off this supply of water to said premises on the ground of non-compliance with its rules; or, in the alternative, for an order authorizing and directing said receiver to pay the same, with interest, and any and all water bills accruing after December 18, 1931.

This matter is of the greatest importance to the water company, and it appears from the brief of the petitioner also of interest to all mortgagees and all receivers of rents of premises in the territory of the water company, as there are upwards of ten other foreclosure actions now pending in this court, and others will be pending, as stated by counsel, wherein the same question is or will be involved.

The receiver is confronted by a serious problem as the responsible authority in charge of this large apartment house. Singularly enough, this question seems not to have been presented in this exact form in the State of New York, as counsel urge. It is important beyond the ambit of this particular discussion in this foreclosure action, involving a water company and an owner and the receiver, and especially in view of the rapid development of utilities in our country. The receiver is certainly within his rights to raise the question and to challenge the threatened act of the water company. The authority, duties and responsibilities of a receiver

in foreclosure actions all urge his action of protest. By reason of this foreclosure a new entity appears in the picture. While the present owner has the title, the receiver appointed by this court, in effect an agent of the court, supplants the owner of the property for the time being; he is in possession and control.

In *Finch* v. *Flanagan* (208 App. Div. 251, at p. 254) Mr. Justice VAN KIRK admirably expresses his views of a receiver's qualification and powers as follows: "A receivership in foreclosure is an extraordinary remedy. A receiver is the agent of the court. His appointment is for the protection of the interest of a party, but his possession and acts are those of the court. The court will not assume the duty and responsibility of a receivership upon the consent of, or for the accommodation of, a person. By such a receivership the court takes possession of a person's property before judgment and before a debt or an amount to be satisfied is determined; it subjects a person and his property to a considerable expense and deprives him of the use of his property without justification unless good cause therefor is shown."

And HOTCHKISS, J., in *Lathers* v. *Hamlin* (102 Misc. 563), expresses his views upon this point as follows: " The receiver now petitions the court for instructions. The power to appoint a common-law receiver is a prerogative of a court of equity in aid of its jurisdiction, and by means of which the *res* is detained in *custodia legis* until in the orderly course of procedure the rights of the parties can be determined. Until interlocutory decretal order or final decree the title and interest of the parties in the *res* remains as before suit brought. The only purpose of the receivership is to secure the property or thing in controversy so as to preserve it from loss or destruction or waste and that it may be subjected to such order or decree as the court may subsequently make." And further, " The receiver in such a case as the present is a mere custodian and manager of the property under the direction of the court. * * * His possession is the possession of the court." (See, also, *Public Bank* v. *London*, 159 App. Div. 484.)

And this receiver, therefore, confronted with this emergency, realizes the waste that would occur to this property in his charge were the water to be shut off and the tenants in that case compelled to evacuate the premises.

In discussing the mutual rights and obligations involved here, one must keep in mind the peculiar quality of the service and the reasonableness of the promulgated rules. We are dealing here with a vital element in the comfortable enjoyment of our concentrated and crowded municipal existence. Water is a prime necessity and any act of a company which would seek to deprive

consumers of this essential element would be regarded as an unreasonable act on the part of such a company.

In our sister State of New Jersey, in Chancery, the case of *McDowell* v. *Avon-by-the-Sea* (71 N. J. Eq. 109), this question was elaborately discussed. At page 112 the court said: " Cutting off the supply of water for domestic purposes is damage of that grievous nature which falls within the principle of the decisions of the court of chancery as to irreparable damage [with citations]."

And at page 113 the court said, after discussing the facts: " On the merits of the case my opinion is, that in the absence of any statute expressly authorizing it, or making the arrearages a lien on the lands, the water company has no right to cut off the supply to complainant's premises unless and until the arrears due from a former owner are paid."

And the court therein emphasized the question of reasonable or unreasonable regulation by a water company. (See, also, 27 R. C. L. 1455, §§ 71 and 72, where we find: " In the absence of legislative authority therefor, a regulation providing that the water supply may be shut off for nonpayment is unreasonable in so far as it may be construed to authorize cutting off the supply when a tenant refuses to pay delinquent water rents owed by a former occupant or owner, as to do so would compel one man to pay another's debt in order to obtain a necessity.") The argument that appeals to me is that which holds that to pay another man's debt, in order to get the water necessary to the occupant of an apartment, is an unreasonable requirement, and the owner's default, and the drastic penalty invoked, should not make a tenant the victim of their controversy.

In *Poole* v. *Paris Mountain Water Co.* (81 S. C. 438) the rule or regulation there involved, so far as material, was to the effect that should the water rent remain unpaid thirty days from the date of the bill, the supply might be cut off without notice. On page 443 of the opinion the court said, in reference to this regulation: " In the absence of a statute making water rents a lien or encumbrance upon the premises, this regulation is not reasonable, so far as it may be construed to authorize cutting off water supply should a tenant refuse to pay delinquent water rents due *by the landlord or former occupant,* as this would coerce a person to pay the debt of another. [Citing cases.] But with respect *to a consumer,* who is under an express or implied contract to pay water rents, it is reasonable to allow the company to protect itself by cutting off the water supply from such consumer until he has paid delinquent water rents *due by him.*" [Citing cases.]

And in *Brass* v. *Rathbone* (153 N. Y. 435, at p. 442), where the

facts were not exactly as in the present case, yet the court set forth the following: " It may be that the act of the tenant in wrongfully using an excess of water without permit or compensation, would not affect the rights of the plaintiffs after the expiration of his tenancy and after they had resumed possession of the premises, as to hold otherwise might result in making them liable for a wrong for which they were in no way responsible."

We are speaking of a product which happens to be essential to the very existence of a functioning habitation of those premises in question. To carry out this threat this company would be endangering health possibly, and in any event, the possession of these numerous tenants who are the innocent parties in this controversy between the former owner and the water company.

It must be assumed, too, that the water company knew and indeed fully appreciated all the obligations of the owner towards his tenants, and especially his duty to secure for them under his contract of rental an ample supply of water. While there was no real privity between the tenants and the water company, still.it must be assumed that there was almost a moral responsibility not to act in relation to this property arbitrarily or capriciously.

There are certain considerations in the product of this water company which takes the dispensing of it out of the classification of a private business enterprise and gives it indeed a *quasi* public character. Rules and regulations of course are necessary and eminently proper to secure payment for the service given to owners of property and for which they are obligated to pay, but all this involves the fee owner, it seems to me, as the responsible party and not this receiver who is sought to be held responsible, in his official character, for a claim which matured before he came into existence.

My conclusions upon this proposition are further and, I might say, finally confirmed by an admirable case that is to be found in the law books of the neighboring Commonwealth of Massachusetts. In that case a decree was entered by the court restraining the defendant from refusing or neglecting to supply the plaintiff with a suitable supply of water so long as he continues to pay the regular water rates, and complied with all other reasonable and usual regulations of the defendant in the future, the defendant being the Revere Water Company, and the case being that of *Turner* v. *Revere Water Co.* (171 Mass. 329). It seemed that the water company in this case refused to turn on the water until the amount due to it for water supplied to the owner from whom the plaintiff in that case hired the dwelling house was paid. And in that case we find a provision that for non-payment of rates after a certain

time the water may be shut off. The court reviews generously authorities in various States upon the question as to the reasonableness of the act of the water company to turn off the supply, for a sum of money due from a prior party or owner, and at page 332 it speaks of the New York situation as follows: " The argument derived from foreign legislation and· ordinances of cities in other States seems to us to be of little consequence in determining the question before us as to the effect of the regulation in this case. It may be noted, however, that in New York it is expressly provided that a gas company cannot refuse to turn on gas because a former occupant of the premises has not paid for the gas consumed by him. 2 Rev. Sta. (N. Y. 1896) 1356, 1357." The learned justice who decided the *Turner Case* (*supra*) reviews English cases as well, and at page 335 the learned court said: " It may be desirable that a water company or a gas company should have an easy way of collecting its debts, but we see no reason why it should be enabled by the court to collect a debt from one who is not a party to the contract, when it sells its commodity on credit." And again, at page 336, we find the learned court developing this thought as follows: " Water is a necessity, and without it a house cannot at the present time be occupied in our cities. It must be obtained from a water company, and to compel a man to pay another's debt in order to obtain it seems to us a result that ought not to be reached. Water is even a greater necessity than gas, for there are other means of lighting in use; yet in the case of gas there is a decision directly in point." And the court then quotes from *New Orleans Gas Light & Banking Co.* v. *Paulding* (12 Rob. [La.] 378). There the decision of the court as to a provision of this nature was clean cut, and a regulation of this drastic nature was declared to be " unreasonable and void."

The court names the receiver as a protector of the property, not as an arbitrator of prior obligations of the owner. Were such duties to be the obligation of the receiver, then the beneficent effort of the court would be a " fantastic futility," as Lord BERKENHEAD said of the League of Nations.

The clause in the order appointing a receiver, which permits or directs the payment of prior unpaid water rates, I shall construe as limited to water rates which are a lien upon the property or which are otherwise collectible from a receiver by reason of some authorizing statute or some contract binding upon the receiver, which is not this case. I, therefore, am constrained to deny the motion, except that the receiver may be permitted and authorized to pay the water rates for water furnished during the continuance of his receivership, and beginning with the date of the order of his appointment. Ten dollars costs. Order on notice.