# THE MAYOR AND CITY COUNCIL OF BALTI-MORE *vs.* EDWARD A. DAY.

*Construction of Grant to Baltimore City of Right to the Water of a River for the Municipal Water Supply—Conditions Subsequent in Deed.*

The city of Baltimore constructed a dam on a river as a part of its water supply. Plaintiff, a riparian proprietor below the dam, executed a deed by which he granted to the city the use in perpetuity of so much of the stream as flowed by, along, and upon the lands of the grantor. It was declared to be the intent of the deed not to grant the fee-simple in the bed of the stream, but to give to the city the full and unrestricted control of the river "for the purpose of maintaining a pure water supply for the use of the inhabitants of the city of Baltimore." Plaintiff alleged that the city sold the water to persons and corporations not within the city limits and asked for an injunction to restrain the city from using the water of the river for supplying any section of country outside of the municipal limits. *Held*, that the deed conveyed to the city the complete right to use all the water of the river in any manner authorized by statute, and that the reference to the inhabitants of the city in the deed, was only descriptive of the general purpose for which the right was obtained, and did not operate to prevent the city from disposing of the water to persons not inhabitants thereof.

Appeal from an order of the Circuit Court for Baltimore County (BURKE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*John V. L. Findlay, City Counsellor,* for the appellant.

*John I. Yellott* and *A. A. Piper,* for the appellee, submitted the cause on their brief.

BRISCOE, J., delivered the opinion of the Court.

The Mayor and City Council of Baltimore acquired by condemnation and purchase the right to use, as part of its water supply, the water of the Gunpowder River, above Loch Raven, in Baltimore County, at which point a large

dam and lake were constructed.    The plaintiff is a riparian proprietor on the Gunpowder River below the dam.    He filed a bill against the Mayor and City Council alleging in in substance as follows: That the defendant had acquired from a large number of riparian owners " the right to use so much of the water of said stream as would flow through a conduit of the capacity of flow of 170,000,000 of gallons per day, as may be wanted for the purposes of introducing water into the city of Baltimore" * * *, " that the defendant failed to acquire by contract or condemnation any rights whatever in said stream of water belonging to this plaintiff," until the month of June, 1898, when the deed, which will be hereafter described, was executed.

The bill further charges thas he has many valuable rights as riparian owner in the waters of the Gunpowder Falls aforesaid, and the flow of the said stream upon and along his aforesaid lands.    That the defendant did for a period of about eighteen years interfere with such right and deprive him of the full and proper use of said stream without agreement or compensation of any kind, by diverting and using a large part of the water for " Baltimore City Water Supply," and as your orator has lately learned that such waters were not used solely for the purpose of furnishing the inhabitants of Baltimore City with a proper and sufficient water supply, and is now being withdrawn from the said stream at a point in Baltimore County, by the said The Mayor and City Council of Baltimore, for commercial purposes, and as a commodity, which is sold to divers brewers, manufacturing establishments, milling places, and private citizens, for business and domestic purposes in Baltimore County, and outside the limits of Baltimore City, and not for purposes of water supply for inhabitants of Baltimore City; that a large quantity of the water taken from the said Gunpowder stream by the Mayor and City Council has been, and now is being, taken for use in localities beyond the corporate limits of the city of Baltimore, and that said city now enjoys an annual revenue of more than $10,000

for the use of water so taken by said city from said Gunpowder stream, and sold and supplied to individuals and corporations beyond and outside the corporate limits of the said city of Baltimore. That the taking of this large quantity of water·from the said Gunpowder Falls, or stream, by the Mayor and City Council of Baltimore, and sold and supplied to users of water outside and beyond the territorial limits of the city of Baltimore, is without authority of law or right, as it affects your orator. It has been for many years a serious injury and damage to him, continues to be a serious damage, and is one for which no compensation can be had at law. That the work of so unlawfully withdrawing and using such water is continuous, is an invasion of the property rights of the complainant in said stream of water, but if allowed to continue will ripen into a prescriptive right on the part of the defendant ; that such unauthorized user of the waters of said stream materially and injuriously affects the whole of your orator's said property, now in his possession, and constitutes a blot upon the title thereto—which he is entitled to have removed.

The defendant demurred to the bill, and from an order overruling the demurrer this appeal has been taken.

The deed from the plaintiff to the defendant referred to in the bill of complaint was executed on June 16, 1898. After a preamble reciting that a settlement had been agreed upon of suits then pending between the parties or that thereafter should be brought, the deed grants to the Mayor and City Council of Baltimore, " subject to the understanding and agreement as hereinafter contained, the use in perpetuity of the bed of the stream of the Gunpowder River, or Great Gunpowder Falls, or howsoever called or named, from the Loch Raven dam of the Mayor and City Council of Baltimore, at or near Meredith's Ford bridge in Baltimore County, in the State of Maryland, down even to tidewater, to-wit, so much thereof as flows by, along, across or upon the lands of the parties hereto of the first part.   *    *    *    It is understood and agreed that the in-

tent of the above settlement, and of this deed, that the Mayor and City Council of Baltimore, its successors and assigns, shall be entitled at all times, now and hereafter, to remove from said Loch Raven dam, by pumping or any other process it or its water board or officials may, from time to time, adopt, all the water, mud-sediment or alluvial deposits which may have heretofore, or which may hereafter, from time to time, accumulate in said dam, and to deposit the same in the stream, or bed of the stream, of said river or falls over or around the breast of said dam into the water or bed of said stream below said dam.    It being the further intent of the above settlement, and of this deed, not to grant the fee-simple in the bed of the stream of said river or falls to the Mayor and City Council of Baltimore, but to grant and convey to the Mayor and City Council of Baltimore, its successors and assigns, such right in and to the same as shall secure to the Mayor and City Council, its successors and assigns, in perpetuity, the full and unrestricted control of such stream, river or falls, for the purpose of maintaining a pure water supply for the use of the inhabitants of the city of Baltimore, and of making and completing, from time to time, all necessary repairs and cleansing incident thereto."

The appellee's contention is "that the deed from Day and wife to the appellant gave to the grantee the use of and control of the waters of the Gunpowder stream for one purpose only, to-wit, to control the stream so as to secure and maintain a pure water supply for 'the use of inhabitants of Baltimore City.'    That the use of the waters of the stream for other purposes, such as complained of—as an article of merchandise to be sold for the city's private benefit to breweries and manufactories outside the limits of the city, was entirely unauthorized by the terms of the grant.    Here is a grant of the water of this stream for a particular limited purpose, which purpose requires a known limited use of water, and if the city of Baltimore uses it for other purposes, which other user injuriously affects the property rights

of the appellee, we may bring suit at law or seek injunctive remedy."

In this construction of the deed we are unable to agree. Its effect is to give to the city, so far as the appellee could give, the right to use all the water of the Gunpowder for its water supply. The words "for purpose of maintaining a pure water supply for the use of the inhabitants of the city of Baltimore," when considered in the light of the context, do not operate to limit the water right so granted or to prohibit the city from disposing of the water to persons not inhabitants thereof. These words cannot be construed as a condition subsequent or as a limitation upon the right of the city to use the water in any way it may be authorized by statute to use it. The sale of water by the Mayor and City Council of Baltimore City to the inhabitants of Baltimore County, is not illegal. It is expressly authorized by statute, Act of 1898, ch. 123. In *Newbold* v. *Glenn*, 67 Md. 489, an ordinance of Baltimore City authorized the trustees of the McDonogh fund to buy a lot of ground as a site for the Institute, and the property was conveyed to the Mayor and City Council of Baltimore " in trust for the uses and purposes and subject to the trusts, limitations, powers and provisions imposed, expressed and declared in and by said ordinance." It was held that the city acquired an absolute fee-simple title to the property and that the object of the statement first quoted was to show the purpose for which the property was bought and the character in which it was held and not for the purpose of limiting the right of alienation on the part of the city authorities.

In *Kilpatrick* v. *Mayor and City Council of Baltimore*, 81 Md. 179, the deed by which land was conveyed to the city, declared that it was " as and for a street to be kept as a public highway." It was held that these words did not create a condition or operate to prevent the city from using the land as a park or square.

The cases of *Kane* v. *Baltimore*, 15 Md. 240, and *Baltimore* v. *Appold*, 42 Md. 442, relied on by the appellee, pre-

sent circumstances very different from those existing in the present case. In *Kane's case* the city had acquired by condemnation, the right to take the water in Jones' Falls, at a certain point for the purpose of its water supply. It was held that this condemnation and the Act of 1853, ch. 376, under which it was had, did not authorize the city to prevent the plaintiff from using the water in the stream for the purpose of running his mill, when such water was not needed by the city. In that case the city drew the water at a point above the plaintiff's mill, and it was held that the city was not authorized to interfere with plaintiff's use of the water below the point of intake.

In *Appold's case*, it was held that the city was not legally entitled to empty a great quantity of water into a stream so as to impose a new servitude upon the land of a lower riparian owner by causing the stream to overflow its banks, &c.

This construction is further sustained by the deed itself, which conveys " so much of the water as flows by, along, across, or upon the lands of the parties hereto of the first part." This is manifestly not a limitation upon the grant of the appellee's water rights, but a grant of his entire right and control thereof.

For the reasons we have given the order overruling the demurrer will be reversed, and bill dismissed with costs.

> *Order reversed, and bill dismissed,*
> *with costs.*

(Decided June 21st, 1899).