MARION H. MERRYMAN v. MAYOR AND CITY COUNCIL OF BALTIMORE.

*Action Against City—Failure to Make Water Connection— Evidence.*

Where, at the time of applying for a water connection, the applicant agreed to pay for the making of the connection and all charges for the use of water, as regulated by law, the acceptance of the application created a contract under which the city by implication agreed not only to supply the applicant with the water asked for, subject to its reasonable regulations, but also to supply it within a reasonable time.             pp. 427, 428

In such case, if there was no main in the street on which the applicant's property was located, with which the connection could be made, the city should have so notified plaintiff, and furnished him with a statement of the cost of installing a main on such street.             p. 429

In an action against a city for failure to supply water to plaintiff's property by constructing a connection with its main, after its acceptance of his application for such supply, a question asked plaintiff as to what he did after a long absence in another state, on finding that the water had not been supplied, *held* admissible.             p. 430

Testimony by plaintiff that he had not received a letter alleged by defendant to have been written him by one of its officials *held* admissible, with a statement of the reasons on which he based his denial of its receipt.                                    p. 430

Evidence was also admissible as to defendant's designation of certain pipes in the street on which plaintiff's property was located, as to its usual procedure in case of an application for water, as to defendant's reasons for not connecting service pipes with pipes of one inch or less, and as to certain rules of its water department.                                    p. 430

A clerk in the water department was properly allowed to be asked whether he treated plaintiff's application in the ordinary way.                                    p. 431

*Decided July 8th, 1927.*

Appeal from the Superior Court of Baltimore City (ULMAN, J.).

Action by Marion H. Merryman against the Mayor and City Council of Baltimore City. From a judgment for defendant, plaintiff appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, and PARKE, JJ.

*J. Purdon Wright,* for the appellant.

*Charles C. Wallace, City Solicitor,* and *John Henry Lewin, Assistant City Solicitor,* with whom was *George E. Keiffner, Assistant City Solicitor,* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment for defendant's costs in a suit brought by the appellant, Marion H. Merryman, against the Mayor and City Council of Baltimore.

The declaration upon which the suit was brought alleged that, prior to the fifth day of November, 1923, the defendant,

the Mayor and City Council of Baltimore, had acquired, by purchase, all the property and assets of the Baltimore County Water Company, a public service corporation, which prior to such time had been engaged in supplying the residents of Towson and other vicinities of Baltimore County with water. It thereupon became the duty of said defendant, as successor to said water company, upon formal application and payment of certain prescribed connection charges, to furnish water to all owners of property in the areas through which the water mains of said water company had theretofore been laid. That the plaintiff was, prior to said fifth day of November, 1923, and has ever since been, the owner in fee simple of a lot of ground in Towson on the south side of Susquehanna Avenue, about one hundred feet east of Washington Avenue, upon which he, in the fall of 1923, erected a large and substantial frame building intended to be used for residential and business purposes. That on the said 5th day of November, 1923, after the plaintiff had practically completed the erection of said building, he made formal application to the defendant corporation "to have an adequate supply of water delivered to his said premises." That some time prior to said date, "water mains had been laid in the beds of the avenues immediately adjacent to the plaintiff's said property by the aforementioned water company," which had been taken over by the defendant corporation, and were then and are now in existence and used by the defendant corporation as a part of its said water system. That the plaintiff, at the time of making his application for a supply of water, was required by the defendant to pay the sum of sixteen dollars to cover the installation charges, which were paid to Charles E. Bichy, collector of water rents and licenses for the defendant, and his receipt taken therefor. That upon the plaintiff's formal application for water services and the payment of the installation charges which were exacted of him, it became the duty of the defendant corporation to "provide and lay the pipes, meter and fixtures, etc., necessary to * * * deliver an adequate supply of water to said

premises within a reasonable time thereafter." That after making the application and paying the required installation charges, he, on several occasions thereafter, notified the defendant corporation that the water had not been delivered to his premises, and received promises that the matter would be attended to, but the defendant failed to deliver any water thereat, until the 13th day of July, 1925, "in consequence of which he (the plaintiff) was during all of said period, prevented from renting or making any other disposition of his said building, and the same was rendered of no use or value to him whatsoever, to his great loss and injury, due entirely to the failure and neglect of the defendant corporation to perform and complete its aforesaid undertaking."

To this declaration the defendant pleaded never promised, and never indebted as alleged, and issue was joined thereon. No question was raised as to the pleading.

At the trial of the case forty exceptions were taken. At the conclusion of the whole testimony a prayer was offered by the defendant asking that the case be withdrawn from the consideration of the jury, because of a want of evidence legally sufficient to entitle the plaintiff to recover. This prayer was granted and an exception was taken to the action of the court thereon. The other exceptions were to the rulings of the court upon the evidence.

The facts, as disclosed by the record, are substantially these:

Marion H. Merryman, the appellant, a resident of Towson since 1903, owned his home on the southeast corner of Washington and Susquehanna Avenues. He also owned a lot adjoining on the east, fronting on Susquehanna Avenue.

In 1903 there was a two-inch main laid in Washington Avenue by the Baltimore County Water Company, but paid for by the appellant and one Morton. It, however, became the property of said company and passed to the appellee in its purchase of the property and assets of that company. The home of Merryman, on the southeast corner of Washington and Susquehanna Avenues, was supplied with water

from that main by means of a three-quarter inch pipe, laid in Susquehanna Avenue and connected with the Washington Avenue main at the corner of said avenues. Immediately east of appellant's home is the lot owned by him upon which the building in this case was erected, known as No. 25 Susquehanna Avenue. Next to it, on the east, is a printing plant, and beyond and adjoining the printing plant is a railroad depot. Both the printing plant and depot were, and had been for years, supplied with water by means of an inch pipe connected with the two-inch main in Washington Avenue, and running eastwardly therefrom in Susquehanna Avenue to and beyond the printing plant to a point opposite the railroad depot, where it stopped. The two-inch main in Washington Avenue, the three-quarter inch pipe by which water was supplied to the home of the appellant, and the one inch pipe by which water was furnished to the printing plant and railroad depot, were all in existence at the time of the application made by the appellant for a supply of water for the newly erected building.

On the 5th day of November, 1923, when the building was about completed, the appellant made formal application to the appellee for water for said building and premises and paid to the appellee sixteen dollars "for introduction of water from city main to supply premises 25 Susquehanna Avenue, Towson," as stated in the receipt given therefor. The appellant at the same time signed an application, in which it is said that the "water board of the City of Baltimore will make connection with the main pipe for the supply of the premises 25 Susquehanna Avenue of which Marion H. Merryman is owner"; and that "the undersigned owner of said premises hereby agrees to pay the water board for making the connection and all charges for the use of the water on the above named premises, as regulated by law, until the said connection is severed by duly notifying the collector to stop the supply," etc. As stated by the appellant, about two weeks after making his application, nothing having been done, so far as he could see, towards supplying the premises

with water, he went to the city hall "to hurry them up" in
regard to same.  He was there told that the water would be
installed in about two weeks.  Three or four days thereafter
he saw Mr. Malkus, who had been the field man of the
Baltimore County Water Company and was at that time
working for the water department of Baltimore City, put-
ting in meters; it was he who, in 1903, superintended the
laying of the two-inch main in Washington Avenue, for the
Baltimore County Water Company, from which fact he was
familiar with its location in the avenue.  He also superin-
tended the work of supplying said premises with water when
it was finally done in 1925.  On the occasion mentioned, the
appellant asked Mr. Malkus to make every effort he could
to have the premises supplied with water, telling him that he
could not use or rent the premises until it was done.  After
his conversation with Malkus, the appellant, in January,
1924, went to Florida and did not return to Maryland until
April or May following, when he made complaint to the
man who came to his home to read the meter, that he had
not been supplied with water for the premises No. 25 Sus-
quehanna Avenue.  Later, still not having water, he, on
August 18th, wrote Charles E. Bichy, collector of water
rents, calling his attention to such fact, and concluded his
letter by making a formal demand for the water previously
applied for, and telling him of the loss suffered by him, the
appellant, because of his inability to rent the property with-
out water, and that he would hold the city liable for such
loss.  To this letter he received the following reply:

"August 21, 1924.

"Mr. H. H. Merryman,
    "Towson, Md.

"Dear Sir: I have your communication of the 18th
instant in reference to the delay in installation of
water supply to your property on Susquehanna Ave-
nue, Towson.

"This is a matter that does not come under my super-
vision, as the work is performed by the water engi-
neer's department.  I am, therefore, referring your

communication to Mr. J. S. Strohmeyer, distribution
division, Wolfe and Oliver Sts., for investigation and
report to you.

Yours very truly,
"Chas. E. Bichy,
Collector."

The appellant stated that the above was the only letter
he received from the appellee or its agents in relation to the
water supply asked for by him.   He was asked if he had not
received letters dated December 14th, 1923, and March 12th,
1924, from Frank J. Hablick, bureau of drafting, water
department, Baltimore City, and he said he had not received
either of them.   He testified that, after receiving Mr.
Bichy's letter of August 21st, 1924, he went to the office
of Mr. Strohmeyer, and had a talk with him, and while there
Strohmeyer called up the city solicitor over the 'phone, with
whom he talked.   He could not hear what the city solicitor
said to him, but could hear what Strohmeyer said, and after
talking some time, Strohmeyer suggested "had not he better
get into an agreement with Mr. Merryman."   At the close
of his conversation over the 'phone, he said to the appellant,
"I will have to draw up a paper here to have you sign off
that you are not coming back upon the city for any dam-
ages," and "I said to him, 'I am surprised at your asking
such a question.'   He said very little more, and so I got up
and went on out."   It was not until July, 1925, that water
was supplied by the city to the premises No. 25 Susquehanna
Avenue, at which time the city laid a six-inch main on Sus-
quehanna Avenue, with which the pipe that supplied the
water to the premises of the appellant was connected.   Evi-
dence was also offered by the appellant showing the rental
value of the house and premises and the loss sustained by
him by his inability to rent the same on account of the fail-
ure of the city to supply the premises with water.   After
it was supplied with water, he, on the 28th day of January,
1926, rented the property for one year commencing the first

day of February, 1926, at and for the sum of sixty-five dollars per month.

It is contended by the appellee that the payment of the sixteen dollars by the appellant to the appellee, and his application made at the same time for a supply of water to the premises owned by him, was an application for "making connection with the main pipe" in Susquehanna Avenue, the street adjacent to said premises, provided there was an available main in said avenue. As construed by the appellee, no pipe less than two inches is a main, with which it is required to make such connection, and as there was not a pipe of that size in Susquehanna Avenue, they were "excused at law because of impossibility or because of mutual mistake of a material fact, the subject matter of the supposed contract, namely, an available main in Susquehanna Avenue was not in existence" or, as stated by the appellee in its brief: "It may properly be said to have constituted an offer by the appellant to the city, looking toward the formation of a contract for a main extension if necessary. It may have constituted the initial step in negotiations and so formed a part of a larger contract for water supply and main extension in Baltimore County."

In the evidence offered by the appellee is the testimony of one Levy, assistant distribution engineer of the water supply of Baltimore, in which he says, "When an applicant desires water supply he signs one of these applications, and that is just a kind of starting place; that is sent over to the bureau of water supply and immediately an inspection is made to see whether a main is located in that street or not; when we find a main existing we send out there to have the service installed. If there is no main existing, we send to the bureau of drafting to draw up plans, and plans are drawn up and the appellant is notified that it will be necessary to deposit the amount of the probable costs of the installation of that main." The witness could not say from personal knowledge what was done in this case, that is, whether such procedure was followed.

At the time the application was made in 1923, an applicant was required to pay the costs of the installation of a main

before such installation was made, but after the creation of the Baltimore County Metropolitan District by the Act of 1924, ch. 539, this was not required, as the district advances to the city the costs of laying the mains, and in turn is reimbursed by a special assessment upon the consumer; and in July, 1925, a six inch main was actually laid in Susquehanna Avenue, through which water was supplied to the applicant's said premises without requiring him first to pay said costs.

It is said in 3 *Dillon, Munic. Corp.,* sec. 1317, "So far as the consumption of water is concerned, it is immaterial to the consumer whether the supply be furnished by the municipality or by a public service corporation. As a general rule the obligations to the consumer are the same in either case. The organization supplying water * * *, whether it be a municipal or a private corporation, is under a duty to consumers to supply the water * * * impartially to all reasonably within the reach of its pipes and mains. * * * Whether the supply be furnished by a municipal or by a private corporation, the water * * * must be furnished to all who apply therefor, and offer to pay the rates and abide by such reasonable rules and regulations as may be made as a condition of rendering the service. * * * Acceptance by the city or by a public service corporation of an application for a service of water * * * and compliance on the part of the consumer with the reasonable rules and regulations, creates an implied contract under which the city or the corporation by implication agrees to furnish a sufficient supply for the ordinary uses of the consumer." As to the liability of municipalities in such cases, see also *Rittenhouse v. Baltimore,* 25 Md. 336; *Darling v. Baltimore,* 51 Md. 1; 20 *Am. & Eng. Encyc. of Law,* 1197, *"Municipal Corporations."*

In this case the appellant, at the time of making his application, agreed to pay the water board for making the connection and all charges for the use of the water, as regulated by law, until the said connection was severed in the manner therein stated. The acceptance of this application, we think, created an implied contract under which the city, by implication, agreed not only to supply him with the water asked for

in his application, subject to the reasonable rules and regulations of the appellee, but also to supply the water within a reasonable time thereafter.

It was thought by the appellant that a connection could be made with the inch pipe then in Susquehanna Avenue. He, at such time, knew nothing of the construction or holding of the appellee that a pipe less than two inches was not a main, within the meaning of that word as used in his application. After making the application, the appellant remained at his home in Towson until January following, a period of two months, hearing nothing, he says, from the appellee. He then went to Florida and returned in April or May thereafter. Upon his return home he found that the premises No. 25 Susquehanna Avenue had not been supplied with water. Early thereafter, the meter man came to his home to "take the meter," and he spoke to him of the failure of the appellee to supply water to his premises. Later he wrote to Mr. Bichy and received the letter which is hereinbefore set out in full. During this whole time the appellant, as stated by him, was never told by the appellee of its ruling that the inch pipe in Susquehanna Avenue was not a main with which a connection could be made; and if any plans were ever made by the bureau of drafting for the installation of a main in said avenue, he was not informed of it, and was never asked to deposit the amount of the probable costs of such installation. Until told of the contention of the appellee that the inch pipe in Susquehanna Avenue was not a main, and that a new main would have to be installed therein before any supply of water could be made to the premises, there was nothing further for the appellant to do under the rules and regulations of the appellee, as disclosed by the record.

As stated by Dillon, the appellee "is under a duty to consumers to supply the water impartially to all reasonably within the reach of its pipes and mains."

The appellant had obtained water for his home, on the corner of Washington and Susquehanna Avenues, through a three quarter inch pipe laid in Susquehanna Avenue, con-

nected with the two inch pipe in Washington Avenue; and
both the printing plant and the railroad depot, which are
located east of 25 Susquehanna Avenue, were supplied by
the one inch pipe in said last named avenue, which was
also connected with the two inch pipe in Washington Avenue.
If a connection could not have been made with the one inch
pipe in Susquehanna Avenue, it would seem that a con-
nection could have been made under the regulations of the
appellee with the two inch pipe in Washington Avenue, as
was done for the other consumers of water on Susquehanna
Avenue, some of whose premises were at a greater distance
from said point of connection with the pipe in Washington
Avenue than No. 25 Susquehanna Avenue.  This means of
furnishing water to the appellant's premises does not seem
to have been considered by the appellee.  If the appellee,
upon making investigation, found there was no main in Sus-
quehanna Avenue, as defined and understood by it, with
which a connection could be made, it was its duty to so notify
the appellant, and if an installation of a main in Susque-
hanna Avenue was necessary, the appellee, under its own
rules for installing mains, should have made its plans for
the installation of a main therein, if the Washington Avenue
main could not have been utilized, and the appellant fur-
nished a statement of costs for such installation, and not kept
waiting for the supply of water asked for, without being
told of the alleged difficulty encountered by the appellee.  He
should have been given an opportunity to avail himself of
the means of acquiring water, even though at a greater cost
to him.

There was evidence, we think, sufficient to go to the jury,
tending to show loss and damage suffered by the appellant,
resulting from the failure of the appellee, under its rules and
regulations, to supply water to appellant's premises within
a reasonable time after the application was made.

The other thirty-nine exceptions found in the record are
to the rulings of the court upon the evidence.  The first, sec-
ond, third, fourth, fifth, sixth, seventh, ninth, tenth, six-
teenth, seventeenth, twenty-third, twenty-fourth, twenty-fifth,

twenty-sixth, twenty-seventh, thirtieth, thirty-fifth, thirty-sixth, thirty-seventh and thirty-ninth have been abandoned, leaving the eighth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, eighteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-eighth, twenty-ninth, thirty-first, thirty-second, thirty-third, thirty-fourth, and thirty-eighth to be considered and passed upon.

The eighth exception was to the action of the court in sustaining the appellee's objection to the question asked the appellant, "After you came back from Florida, what did you do"? This question, we think, was pertinent to the inquiry as to what was done by the appellant to have the water supplied to him under his application.

The twelfth exception was to the rejection of the appellant's answer to a question asked by the court, whether he had received a certain letter which the appellee claims was mailed to him by one of its officials. We are unable to discover any sufficient reason for the exclusion of his answer. In it he assigned reasons upon which he based his denial, but in them we find nothing to render it inadmissible.

The thirteenth and fourteenth exceptions were to the admission of evidence as to the appellee's designation of the pipes in Susquehanna Avenue. This, we think, was material and was properly admitted; and the same may be said of the fifteenth, seventeenth and thirty-fourth exceptions, where the witness was asked as to the procedure of the appellee when application is made to it for water.

We discover no error in the court's rulings in the nineteenth and twentieth exceptions, admitting evidence of the appellee, giving its reasons for not connecting a service pipe with a one-inch pipe, though, we think, the questions involved in the twenty-first and twenty-second exceptions should have been answered. They were, we think, proper questions upon cross-examination.

The twenty-eighth, twenty-ninth, thirty-second, and thirty-eighth were exceptions to the admission in evidence of certain rules of the water department. These rules, we think, were properly admitted in evidence and we find no error in

the court's rulings thereon. Nor can we say that the court erred in its ruling on the eleventh exception, as it is not shown with sufficient clearness to what questions the exception was taken. The question asked by the plaintiff's counsel in the thirty-first exception, whether there were other rules than those mentioned, was, we think, wrongfully excluded.

By the thirty-third exception, a clerk in the bureau of water supply was asked if he treated the application in the ordinary way, and his reply was that he did. We find no error in the admission of this evidence, as it was, we think, material to the issue.

From what we have said, the judgment appealed from must be reversed.

*Judgment reversed, and new trial awarded,
with costs to the appellant.*