HOME OWNERS' LOAN CORPORATION *v.* MAYOR
AND CITY COUNCIL OF BALTIMORE ET AL.
[No. 86, October Term, 1938.]

678

*Decided January 11th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Thomas E. Barrett, Jr.,* and *Franklin P. Gould,* with whom were *John I. Rowe* and *Risque W. Plummer* on the brief, for the appellant.

*Charles R. Posey, Jr., Assistant City Solicitor,* with whom was *Charles C. G. Evans, City Solicitor,* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

This appeal is from an order of the Baltimore City Court dismissing the petition of the Home Owners' Loan Corporation for a writ of mandamus directing the defendants, the Mayor and City Council of Baltimore and Leon Small, water engineer of Baltimore, to restore the water service to the petitioner's property located near Catonsville in Baltimore County.

It is alleged in the petition that the Home Owners' Loan Corporation is a corporate instrumentality of the federal government, organized, existing and operating under a federal act approved June 13th, 1933, (12 U. S. Code, Ann. secs. 1461 to 1463a, inclusive) ; that in the exercise of its lawful powers it acquired by deed from Augustus A. Piper, assignee, on July 29th, 1926, title to a tract of land containing about 22.34 acres on the Frederick Road and Devere Lane in the First Election District of Baltimore County; that the defendants are under a duty, upon application, to supply that property with water, but that they on February 16th, 1936, discontinued water service to the property; that after petitioner took title to the property, defendants submitted to it a claim for water service charges of $139.12, covering charges for water supplied to the property during a period beginning November 2nd, 1934, and ending March 31st, 1938; that petitioner denied its liability for charges accruing prior to the date on which it acquired title to the property, but tendered itself ready and willing to pay all charges accruing since that date, and demanded that defendants restore water service to the property, but that defendants refused to restore said service unless appellant paid all

arrearages, including those which had accrued before it took title to the property, and that such refusal will result in great and irreparable damage to the petitioner. Defendants, after denying all issuable allegations of fact, alleged that the service was discontinued on April 12th, 1937, and asserted its right to refuse water service to the property until all arrearages for water service thereto are paid. The case was tried on those pleadings and at the conclusion of the trial the petition was dismissed.

The question submitted by the appeal is not novel. It is whether a public utility corporation, under a duty to supply, without discrimination, its service to all persons applying therefor, may rightfully refuse to serve a person who acquired title to property from an owner served by the utility, unless and until the transferee pays all charges and arrearages due by the former owner to the corporation for service rendered before the transfer.

It is axiomatic that a public service corporation, private or municipal, is under a duty to furnish to all persons applying therefor the service which it offers without discrimination and at reasonable rates, where the service requested is within the reasonable range of its plant, equipment, lines or mains. *Dillon, Mun. Corp.* (5th Ed.) sec. 1317; *McQuillen, Mun. Corp.* sec. 1946 n., secs. 1821, 1829; 51 *C. J.* 7; *Merryman v. Baltimore,* 153 Md. 419, 427, 138 A. 324. Where the service or utility is supplied by a municipality, it has been said that, while the purpose must be public and the utility must be impressed with a public interest, nevertheless the municipality acts in its business or proprietary rather than its governmental character *(McQuillen, Mun. Corp.* sec. 1946; 43 *C. J.* 420; *Wagner v. Rock Island,* 146 Ill. 139, 34 N. E. 545), and that is especially true where the service is supplied beyond the territorial limits of the municipality. *Dillon, Mun. Corp.* secs. 1299, 1300.

The decided weight of authority supports the proposition that a municipality engaged in a public utility business may not supply the utility beyond its territorial limits unless thereto authorized by a statute, by its char-

ter, or by the constitution of the state in which it is located. *Dillon, Mun. Corp.* sec. 1299; *McQuillen, Mun. Corp.* secs. 1944, 1945.

In this case the power of the City of Baltimore to furnish water to the inhabitants of Baltimore County may be found in its charter (Charter and Pub. Loc. Laws, (1938) sec. 6, subsecs. 30(B), 30(G), (E); *Baltimore City v. Day*, 89 Md. 551, 555, 43 A. 798; *Merryman v. Baltimore*, 153 Md. 419, 138 A. 324), and in certain statutes, Acts 1918, ch. 82, sec. 17; Acts 1908, ch. 214, sec. 1 (p. 649), sec. 17. Collateral to, but considered in connection with, these statutes are certain ordinances of the City of Baltimore. Baltimore City Code, art. 48, secs. 14, 27, 35, and Acts 1937, ch. 186, Acts 1924, ch. 539.

The rates for the service, sometimes referred to as taxes, are literally service charges. They are not taxes, in the ordinary sense of that word (*Pond, Public Utilities*, secs. 222, 224; *Dillon, Mun. Corp.* sec. 1323; *McQuillen, Mun. Corp.* sec. 1948), but are commonly referred to as rates or rents, although the charge is for a commodity actually consumed, but as the term "service charge" is not infrequently applied to the installation of equipment, the term "rent" conveniently and sufficiently identifies and distinguishes the charge for supplying the water. The general rule is, that, unless made so by statute, water rents are not a lien on the property served (*McQuillen, Mun. Corp.* sec. 1949; *Dillon, Mun. Corp.* sec. 1323), nor, in the absence of statutory or contractual authority, may the corporation discontinue its service to property to coerce the owner thereof into paying charges incurred by a former owner for service rendered before the present owner acquired title thereto (27 *R. C. L.* 1455; *McQuillen, Mun. Corp.* sec. 1822-1825; *Title Guarantee & Trust Co. v. 457 Schenectady Avenue*, 260 N. Y. 119, 183 N. E. 198; 28 *A. L. R.* 486; *Etheredge v. Norfolk*, 148 Va. 795; 139 S. E. 508; 13 *A. L. R.* 349), unless the charges constitute a lien on the land. *Ibid.*

In this case no provision can be found in any statute affecting the rights of the parties, which expressly makes

water rents a lien on the property served, or authorizes the corporation to discontinue its service to property unless the owner thereof pays the debt incurred by a former owner for service to him.

It is suggested that, since Charter and Pub. Loc. Laws of Baltimore City, sec. 6, subsec. E, provides that payment of water service charges may be enforced "by the same process that city or state taxes are collected, or that may be collected by process before a Justice of the Peace, or in any of the Courts of the City of Baltimore having jurisdiction in such cases," that such charges are by the force of that statute a lien on the property served. The only authority cited in support of that proposition is a decision in one of the law courts of Baltimore City, 3 Baltimore City Reports 152. Without attempting to review that case, which is not in point here, it may be said that, while logic and certain analogies lend some support to the conclusion of the court in that case, the general trend of case law appears to be the other way. Taxes are not a lien on property unless expressly made so by statute (61 *C. J.* 912, 920; *Thompson v. Henderson,* 155 Md. 665, 666, 142 A. 525; *Parlett v. Dugan,* 85 Md. 407, 409, 37 A. 36; *Dillon, Mun. Corp,* sec. 1421), for as stated in *Cooley* on Taxation sec 1230: "The general rule is that taxes are not a lien unless expressly made so by statute or ordinance; and a statute to create a tax lien must expressly provide for the lien, or the implication must be so plain as to be equivalent to positive language." In this state legislative recognition of that principle may be inferred from the fact that the Legislature has in express terms made all "State, county and city taxes" a lien on real estate in "respect of which they are levied", Code (Suppl. 1935) art. 81, sec. 69; Code, art. 81, sec. 56. If that is true of taxes, *a fortiori* it must be true of such a charge as a water rent. The statute does, it is true, authorize the enforcement of the payment of such charges by the "same process that City or State taxes are collected, or they may be collected by process before a Justice of the Peace, or in any of the Courts of the City of Baltimore

having jurisdiction of such cases", but that very language indicates in the clearest way that it was not intended to apply to the collection of charges for delivering water to property beyond the territorial limits of Baltimore. The suggestion that the situs of the debt is at the creditor's domicile is hardly in point. *Salyers Auto Co. v. DeVore,* 116 Neb. 317, 217 N. W. 94; 2 *R. C. L.* 806, cited in support of the suggestion, deal only with jurisdiction of courts over the *res* in attachment proceedings; they have no connection with the venue in ordinary actions of assumpsit between residents of the same state.

The courts of the City of Baltimore would obviously have no jurisdiction in such an action brought against a person residing in the state but beyond the city limits. Nor would the machinery provided for the enforcement of the payment of state and city taxes be applicable, whether the expression used be intended to apply to the collection of taxes in the city, or in one of the counties, or in the particular county in which the property served is located, since tne city officials charged with the collection of taxes would have no official authority beyond tne territorial limits of the city, and the county officials would be under no duty to act. Certainly there is no intention implicit in that statute that rent for water service to property lying in Baltimore County shall constitute a lien thereon, and, since no other statute makes charges for water service supplied by the corporation to property beyond its territorial limits a lien thereon, no lien on such property for such charges exists.

Certain ordinances of the City of Baltimore (Baltimore City Code, art. 48, secs. 14, 27, 35) are cited apparently in support of the theory that the water charges constituted a lien on appellant's property, but obviously they have no extra-territorial force or effect beyond that which the rules and regulations of any public utility corporation would have. *McQuillen, Mun. Corp.,* sec. 693; 43 *C. J.* 575; *Dillon, Mun. Corp.,* secs. 627, 628. The authority granted to the city in its charter, Charter and Pub. Loc. Laws of Baltimore City (Ed. 1927), sec. 6, subsec. 30 (A),

"to establish * * * a system of water supply for Baltimore City, and to pass all ordinances necessary in the premises," is, by the terms of the grant, limited to Baltimore City, by the qualifying words "for Baltimore City".

It is further suggested that the appellant had the right to cut off its service to appellant's property for failure to pay all accrued charges thereon under certain rules of the Baltimore County Water Company. It is undisputed that the area in which appellant's property is located was formerly served by the Baltimore County Water Company, and it is apparent from an inspection of chapter 82, section 17, Acts of 1918, that before extending its service into that territory the city was required to acquire the property of the Baltimore County Water Company in the area annexed by that Act. It is also undisputed that the city did acquire the assets of that company, which included the lines from which appellant's property was served. Obviously from that time the property thus acquired became integrated with the water supply system of the city, and was operated by it as a municipality and not as the corporate successor of the Baltimore County Water Company, for the municipality derives its powers from the Constitution of the State and the statutes enacted in pursuance thereof, and not from the charters of private corporations. But on December 11th, 1922, the Water Board of Baltimore City adopted a motion "that insofar as extensions and operations in Baltimore and Anne Arundel Counties are concerned, the Water Department be conducted on the same basis as would any well operated public utility corporation; that the schedule and rules governing water supply service filed by the Baltimore County Water and Electric Co. on May 29th, 1920, with the Public Service Commission be reaffirmed", with certain minor amendments. Among the rules of that company was the following:

"All contracts for water supply service shall be made for a period of one year and shall thereafter continue in force by renewal, without act or notice from either party to the other, from year to year." Page 2.

"In the event of any change in ownership of any premises connected to the system of the Company for water supply service, the Company shall be immediately notified, in writing, of such change, giving in such notice the name and address of the new owner, whereupon the Company may, at its option, require the new owner to make application for water supply service in the same manner as is provided for new service connections; in the absence of such application by such new owner the use of the Company's service may, at the option of the Company, be taken and construed to be acceptance by such new owner of all the contract obligations of the preceding owner with and to the Company, accruing from and after the date of change in ownership." Page 2.

"All contracts shall be subject to cancellation, at the option of the Company, and service thereunder may be discontinued by the Company, * * * unless all bills, accounts and charges of the Company have been paid, or until they are properly secured to the satisfaction of the Company, whenever;

"Any Owner refuses or neglects payment of any bill, account, or charge, for or on account of the premises." Pages 4, 5.

If the purpose and intent of these rules was to authorize the corporation to discontinue its service to property because the owner thereof failed or refused to pay the water rent due for service to a former owner, the rule was unreasonable and void (*Title Guarantee & Trust Co. v. 457 Schenectady Avenue*, 260 N. Y. 119, 183 N. E. 198; 28 *A. L. R.* 478; *Waldron v. International Water Co.*, 95 Vt. 135, 112 A. 219; *Etheredge v. Norfolk*, 148 Va. 795, 139 S. E. 508; 27 *R. C. L.* 1455; *McQuillen, Mun. Corp.*, sec. 1824; *Dillon, Mun. Corp.*, sec. 1321), but it is apparent from an examination of the rules that they were intended to grant no such authority. The rule last cited provides that, in the event of a change of ownership of any premises connected with the company's water supply system, the company is to be notified of the change and that, upon receipt of such notice, it may at its option require

a new application, and if the owner refuses to make such application, it may treat his acceptance of the service as acceptance of the contract obligations of the former owner "accruing from and after date of change of ownership", and the service may only be discontinued when "any owner" neglects payment of any charge "for or on account of the premises". The apparent meaning of that language is to make the owner of property liable for service to it while he owns it, not to make him liable for the debt of another for service to it when he did not own it. The same thing is true of another rule, which authorizes a discontinuance of the service if the rates are in arrears for fifteen days.

These conclusions are consistent with the legislative interpretation of the several statutes and ordinances to which reference has been made, which is manifested in chapter 186, section 335, Acts of 1937, and chapter 539, section 6, Acts of 1924, which, while making certain other service charges a lien on the property served, expressly excepts water service charges.

The petitioner bought the property in issue at a mortgage foreclosure sale. The sale was made under the power contained in a mortgage from a former owner to it, and by it assigned to Augustus A. Piper for foreclosure. That mortgage became in default on August 5th, 1934, and remained in default thereafter. The mortgage contains a covenant that until default "the mortgagors shall possess the premises upon paying in the meantime all ground rent taxes and assessments, levies, public debts and charges of every kind, levied or assessed or to be levied or assessed on said property, which ground rent, taxes, assessments, levies, public dues, charges, mortgage debt, and interest the mortgagors do hereby covenant to pay when legally demandable". The appellee contends that upon default the mortgagee became liable under that covenant for water rates charged against the mortgagors. In connection with that contention appellee avers that the covenant was unusually elaborate and comprehensive, and that some significance should be attached to that fact,

but upon examination the covenant appears to be no different from that found in any well drawn mortgage, and its meaning is too clear to require construction.

There are several answers to appellee's contention. The first is that water rent, unless made so by statute, or by contract, is neither a ground rent, a tax, an assessment, a levy, a public debt, or a charge, and it is not made so in this case by either statute or contract.

Then there is no privity of estate between the mortgagors and the appellee. The mortgagee had no interest or concern in the mortgagors' indebtedness to general creditors, and the cases of *Williams v. Safe Dep. & Tr. Co.*, 167 Md. 499, 175 A. 331; *Union Trust Co. v. Rosenburg*, 171 Md. 409, 189 A. 421; *Gibbs v. Didier*, 125 Md. 486, 488, 94 A. 100; and *Waring v. National Sav. & Trust Co.*, 138 Md. 367, 114 A. 57, deal with a different situation and are not in point. In *Williams v. Safe Dep. & Tr. Co.*, and *Gibbs v. Didier*, the court was dealing with the liability of a mortgagee for rent payable by the mortgagor under the covenants of a lease of the mortgaged property, and in those cases the decisions rested squarely upon the privity of estate between the mortgagee as assignee of the term and the lessor. In *Union Trust Co. v. Rosenburg*, and *Waring v. National Sav. & Trust Co.*, the court was dealing with the obligation of a mortgagee to pay taxes accrued on the mortgaged property which were a lien thereon, within the express terms of the covenant of redemise, and ran with the land. In this case there is no privity of estate, nor is there any covenant running with the land, and the relation between the city and the former owner of the land is merely that of debtor and creditor.

The petitioner therefor was under no obligation to pay the charges for services to the property which had accrued before he took title thereto by accepting a deed from the assignee, because those charges were not a lien on the land but a personal debt of the then owner, and since appellant tendered payment of all charges accrued since it so took title, the tender should have been accepted and the service restored.

There was error therefore in dismissing appellant's petition, and it becomes necessary to reverse the order from which the appeal was taken, and remand the case for further proceedings.

> *Order reversed and case remanded for further proceedings in accordance with the views expressed in this opinion, with costs to the appellant.*