Dear Pamela R. Howard
You have requested our opinion concerning the collection of the Bay Restoration Fee. Specifically, you asked whether an unpaid charge is a lien on real property that may be collected through the tax sale process.
For the reasons explained below, we conclude as follows:
1. An unpaid tax or fee does not constitute a lien on real property unless the lien is expressly provided by law. The statute establishing the B ay Restoration Fee does not itself create a statutory lien. Rather, that statute authorizes local governments and other "billing authorities" to use their existing procedures for collecting water and sewer bills to collect the Bay Restoration Fee — procedures that may be used to collect various types of charges in addition to water and sewer fees. In some jurisdictions, current law may provide for a lien that would encompass other charges that may appear on a water or sewer bill, such as the Bay Restoration Fee. However, a local law simply making unpaid water or sewerage charges themselves a lien would be insufficient to create a lien for other unpaid charges.
2. Absent a statutory lien, an unpaid charge may not be collected through the tax sale process.
We recommend that the General Assembly consider the merits of creating a statutory lien for unpaid charges to provide a more uniform enforcement mechanism for collection of the Bay Restoration Fee.
 I Background
In 2004, the Bay Restoration Fund program was enacted to restore the vitality of the Chesapeake Bay by combating nitrogen and phosphorus pollution. That law created a special fund to provide financial assistance for upgrading wastewater treatment plants and other efforts to reduce nutrient flow into waters of the State, with primary emphasis on the Bay. Much of the revenue for the fund is derived from a charge known as the Bay Restoration Fee. The law enlisted local governments and other entities to collect that charge.
You indicated in your letter that Cecil County includes the Bay Restoration Fee on the water or sewer bill for those properties served by County water or sewer services. The charge is included on the property tax bill for other properties. Your letter accurately noted that, pursuant to the Annotated Code of Maryland, Tax-Property Article ("TP"), § 14-804(a), "[a]ll unpaid taxes on real property shall be, until paid, liens on the real property . . . " and that, pursuant to § 265-39 of the Code of Cecil County, "[a]ll rates and/or charges referred to in [Chapter 265 — Waters and Sewers] shall constitute a lien on the real estate served. . . . "[1] However, you also stated that "Cecil County is unable to find any law that states unpaid [Bay Restoration Fees] constitute a lien on the real property." You advised that, based on your counsel's advice, the County could not collect delinquent fees through the tax sale process.
 II Bay Restoration Fund Program
The Bay Restoration Fund program was enacted as Chapter 428, Laws of Maryland 2004, the relevant provisions of which are codified at Annotated Code of Maryland, Environment Article ("EN"), § 9-1605.2. As initially proposed by Governor Ehrlich's Administration, the charge would have applied only to users of wastewater facilities, as defined in EN § 9-1601. However, the bill was substantially amended by the General Assembly to assess the charge not only on those served by public sewer systems, but also on those relying on septic systems and holding tanks. As a result, the law relies on a number of mechanisms to collect the charge. Before considering the specific issues raised in your inquiry, it is worth outlining the relevant provisions of the statute.
The statute establishes the Bay Restoration Fund ("Fund") as a special fund administered by the Maryland Water Quality Financing Administration ("WQFA"). EN § 9-1605.2(a), (f). The Fund is to consist of revenue from the Bay Restoration Fee, the proceeds of bonds issued by WQFA, interest and other income on the Fund principal, and money from other public or private sources devoted to the purposes of the Fund. EN § 9-1605.2(g). The Bay Restoration Fee is to be paid by "any user of a wastewater facility, an onsite sewerage disposal system, or a holding tank that: (i) [i]s located in the State; or (ii) [s]erves a Maryland user and is eligible for funding under [EN § 9-1601, et seq.]" EN § 9-1605.2(a)(4). The applicable charge varies for different classes of users. EN § 9-1605.2(b)(1).[2]
EN § 9-1605.2(d)(2)(i) provides that, except for a wastewater facility without a billing authority, the charge "shall be collected by the local government or the billing authority for the water or wastewater facility, as appropriate, on behalf of the State."[3] As to users who receive a sewer or water bill, the charge is to be listed as a separate charge on the bill and to be labeled "Bay Restoration Fee." EN § 9-1605.2(b)(2)(i). The actual billing authority could obviously vary,i.e., it could be a county, a municipality, a sanitary commission, a water and sewer authority, or other utility, depending on the manner in which services are provided in a particular community. For users of septic systems or holding tanks that do not receive a water or sewer bill, the statute assigns the county responsibility for the collection of the charge, although the county may negotiate with a municipality to assume responsibility for collection within the municipal limits. EN § 9-1605.2(b)(2)(ii)1.
Revenues from the charge are to be remitted by the billing authorities to the Comptroller who is authorized to adopt regulations necessary to administer, collect, and enforce the charge. EN § 9-1605.2(e)(1), (3).[4] The Comptroller and Central Collection Unit are authorized to collect from billing agencies revenues that should have been credited to the Fund. EN § 9-1605.2(e)(2) and (5).[5]
The statute delegates enforcement of the fee to the various billing authorities. Key to your inquiry, the statute provides that:
 A local government, billing authority for a water or wastewater facility, or any other authorized collecting agency:
 (i) May use all of its existing procedures and authority for collecting a water or sewer bill, an onsite sewerage disposal system bill, or a holding tank bill in order to enforce the collection of the Bay Restoration Fee; . . .
EN § 9-1605.2(d)(3)(i).
Remaining provisions of the statute address, among other things, the permissible uses of the Fund,[6] funding priorities, segregation of fees collected from users of septic systems or holding tanks, establishment of a Bay Restoration Advisory Committee, and adoption of regulations by the Department of Environment.[7] EN § 9-1605.2(f) — (k).
 III Analysis
The Tax-Property A rticle prescribes a process by which county and municipal tax collectors may sell property at a tax sale if taxes on the property are in arrears. TP § 14-808, et seq. Availability of the tax sale process as a means of debt collection, however, is tied to the definition of a "tax":
 (1) "Tax" means any tax, or charge of any kind due to the State or any of its political subdivisions, or to any other taxing agency, that by law is a lien against the real property on which it is imposed or assessed.
 (2) "Tax" includes interest, penalties, and service charges.
TP § 14-801(c) (emphasis supplied).[8] Thus, whether the Bay Restoration Fee may be collected through the tax sale process depends on whether an unpaid charge constitutes a statutory lien on real property.
A provision creating a lien must be explicit. It is well established that neither taxes nor service charges are a lien on real property unless expressly made so by statute. Home Owners' Loan Corp. v. Mayorand City Council of Baltimore, 175 Md. 676, 681-82, 3 A.2d 747
(1939).[9] See also 12 McQuillin, The Law of MunicipalCorporations § 35:69 (3rd ed. rev. 2006) (water rates are not a lien on the property served unless provided by statute or otherwise in express, unambiguous terms); 14 McQuillin, supra, § 38.161 (taxes are not a lien on property unless expressly made so by statute).
The Bay Restoration Fund statute does not expressly establish a lien on the property of a person responsible for payment of an unpaid charge. As outlined above, the statute delegates collection of the charge to entities responsible for collecting water or sewer bills. And it simply incorporates whatever authority and procedures already exist under the various billing scenarios — i.e., a collection agency may use "its existing procedures and authority for collecting a water or sewer bill, an onsite sewerage disposal system bill, or a holding tank bill to enforce the collection of the Bay Restoration Fee . . . " EN § 9-1605.2(d)(3)(i).
In many cases, the charge appears as a separate charge on water and sewer bills. In situations where those responsible for paying the charge receive neither a water nor a sewer bill, the county is responsible for its collection. In the latter situation, it is our understanding that the charge is generally included as a separate item on the property tax bill, as is the practice in Cecil County. Whether a delinquent charge for the Bay Restoration Fee is a lien on real property depends on the mechanisms available to the particular billing authority under the law governing that jurisdiction or agency.
Some local laws, such as the Cecil County provisions cited above, make unpaid property taxes or water or sewer charges a lien against the property. But the Bay Restoration Fee is neither a property tax nor a water or sewer charge.[10] A statutory provision making unpaid water or sewer charges a lien against the property served is inadequate to create a lien in favor of the State for other charges, such as the Bay Restoration Fee, that may also be delinquent. On the other hand, a local law that explicitly establishes a lien on real property for any additional charges collected by the billing authority beyond water or sewer charges would create a lien with respect to an unpaid Bay Restoration Fee. Existence of a lien thus turns on the scope of statutory provisions.[11]
Thus, whether a delinquent Bay Restoration Fee is a lien against real property will vary among jurisdictions. Because the tax sale process is only available to collect unpaid charges if the charges constitute a lien, the availability of that process to collect delinquent Bay Restoration Fees will also vary among jurisdictions. The Legislature may wish to consider whether a greater degree of uniformity is desirable in collecting this State-wide charge.
 IV Conclusion
For the reasons set forth above, our opinion is as follows:
1. An unpaid tax or charge does not constitute a lien on real property unless the lien is expressly provided by law. The statute establishing the B ay R estoration Fee does not itself create a statutory lien. Rather, that statute authorizes local governments and other billing authorities to use their existing procedures for collecting water and sewer bills to collect the Bay Restoration Fee — procedures that may be used to collect various types of charges in addition to water and sewer fees. In some jurisdictions, current law may provide for a lien that would encompass other charges that may appear on a water or sewer bill, such as the Bay Restoration Fee. However, a local law simply making unpaid water or sewerage charges themselves a lien would be insufficient to create a lien for other unpaid charges.
2. Absent a statutory lien, an unpaid charge may not be collected through the tax sale process.
We recommend that the General Assembly consider the merits of creating a statutory lien for unpaid charges to provide for a more uniform enforcement mechanism for collection of the Bay Restoration Fee.
William R. Varga, Assistant Attorney General
Robert N. McDonald, Chief Counsel, Opinions and Advice
[1] The latter provision is a county ordinance. Other provisions in the Cecil County Code, namely, the Public Local Laws governing the County's Sanitary District, provide for creation of a lien securing front foot benefit assessments, water and sewer system upkeep charges, connection charges, and related charges authorized under the Sanitary District provisions. See, e.g., §§ 67-17 and 67-21 of the Code of Cecil County.
[2] The law, in effect, created three classes of rate payers and imposed varying implementation dates: (i) Residential dwellings that receive individual sewer bills and users of septic systems or holding tanks that receive water bills (January 1, 2005); (ii)/(iii) Users of septic systems or holding tanks that do not receive water bills (October 1, 2005); and (iv) Multi-unit housing units that receive a sewer bill (but not sewer bills for individual units) and nonresidential users (January 1, 2005). As to the final class, the fees are based on "equivalent dwelling units" and are prorated; the total fee for a single site is subject to an annual cap. EN § 9-1605.2(b).
EN § 9-1605.2(c) exempts certain users of wastewater facilities based on facility discharge factors.
[3] The Comptroller is authorized to collect the charge from the owner of a wastewater facility "without a billing authority." EN § 9-1605.2(d)(2)(ii). This exception would extend to entities such as industrial users that operate their own wastewater treatment facilities.
[4] The Comptroller is to segregate a portion of the fee revenues to cover administrative expenses. EN § 9-1605.2(e)(4).
[5] EN § 9-1605.2(e)(2) provides that, "[e]xcept to the extent of any inconsistency with this subsection, the provisions of Title 13 of the Tax-General Article that are applicable to the sales and use tax shall govern the administration, collection, and enforcement of the restoration fee under this section." However, these provisions would extend only to the Comptroller, not to local billing authorities primarily responsible for collections.
[6] Money collected from users of septic systems and holding tanks is used, in part, for grants or loans for qualifying septic system upgrades, educational programs, and certain technical support, and, in part, for crop cover activities through the Department of Agriculture.See EN § 9-1605.2(h). This section was amended by Chapter 462, Laws of Maryland 2006, altering permissible uses of and funding priorities for these revenues, but the 2006 legislation does not affect our analysis.
Other revenues collected under the statute are dedicated to, among other things, grants for qualifying upgrades to wastewater facilities, payment of bonds issued by the WQFA if the proceeds from the bond sale were credited to the Bay Restoration Fund, and administrative costs, including costs incurred by local governments and other billing authorities, not to exceed 5% of the total fees collected by the billing authority.
[7] Neither the Comptroller's Office or the Department of Environment has yet adopted regulations under the statute. However, both agencies have posted information regarding the Bay Restoration Fee on their respective websites, http://business.marylandtaxes.com/taxinfo /bay_res_fund.asp and http://www.mde.state.md.us/Water/CBWRF/ brf_faqs.asp.
[8] "Other taxing agency" is defined as "any municipal corporation or other public or quasi-public corporation that may impose a tax of any kind which is or may become a lien on real property." TP § 14-801(b).
[9] In Home Owners' Loan Corp., a public local law of Baltimore City provided that "payment of water service charges may be enforced `by the same process that city or state taxes are collected. . . `" The City relied on that language to argue that unpaid water charges constituted a lien on the property served. The Court of Appeals rejected that argument, noting the "general rule" that taxes and water charges are not a lien unless expressly made so by statute or ordinance. 175 Md. at 682. The particular case before the Court involved unpaid charges in service areas beyond City limits and the Court also relied on the fact that the law, which provided for enforcement in Baltimore City courts, could not have been meant to create a lien with respect to properties outside the municipal limits. Id. at 682-83. In any event, it is evident that language incorporating by reference other enforcement mechanisms does not create a statutory lien by itself.
[10] Even if the Bay Restoration Fee were viewed as a tax, it clearly is not a property tax in that a property tax is a charge on ownership of property, without regard to its use, and is based on the assessed valuation of the property. Waters Landing Ltd. P'ship v. MontgomeryCounty, 337 Md. 15, 26, 650 A.2d 712 (1994); see also 91 Opinions of theAttorney General 152, 160-61 (2006).
[11] By way of illustration, § 2-13-24 of the Public Local Laws of Frederick County provides, in part, that "[f]ront foot benefit assessment, drainage assessments, water and sewer system upkeep charges, connection charges, and other charges which the board [of county commissioners] is empowered to make shall be liens upon the property served or benefitted . . . [T]he county director, if directed by the board, shall sell the property of the delinquent property owner in the same manner as other properties are sold at a tax sale. . . . " The statutory reference to "other charges" could extend to related charges the County collects on behalf of the State such as the Bay Restoration Fee. The breadth of this statute, however, is not typical; for example, § 67-21 of the Public Local Laws of Cecil County is limited to "other charges . . . pursuant to [Chapter 67 of the Code]."
Assuming arguendo that a home rule county or municipal corporation could create a lien by local law, no unit of local government could create a lien in a manner than conflicted with lien priorities dictated by State law. See, e.g., May Dep't Stores v. Montgomery County,118 Md. App. 441, 702 A.2d 988 (1997), aff'd as modified, 352 Md. 183,721 A.2d 249 (1998). In any event, Cecil County, lacking home rule, clearly could not create such a lien absent statutory authority. See, e.g., 6 Stevenson, Antieau on Local Government 84.13 (2d ed. 2006) (absent clear statutory authority, a local government utility cannot collect charges as delinquent taxes). *Page 12